OPINION
{¶ 1} On June 28, 2002, at approximately 7:30 p.m., Trooper Darrin Higgins was driving Westbound on Interstate 90 when he observed a vehicle traveling east whose exhaust was hanging low. Huggins notified Trooper Michael Trader, who was on duty nearby, advising him "to look out for" a maroon Oldsmobile with a "low exhaust." Trader observed the vehicle as it passed by his cruiser. Trader testified that the vehicle had a notably loud exhaust. Trader then pulled out behind the car, activated his overhead lights and video camera, and initiated a traffic stop.
 {¶ 2} Trader approached the passenger side of the vehicle, observed two African-American occupants: Appellant, Shontell Jackson sat in the driver's seat and Trolunda Estes ("Estes") was his passenger. Trader advised them of the reason for the stop; viz., the exhaust was loud and looked as though it might fall off.
 {¶ 3} After conversing with appellant, Trader discovered that appellant had neither a driver's license nor registration for the vehicle. Trader asked appellant to exit the vehicle and walk back to his cruiser whereupon appellant informed Trader that he was not a licensed driver. At that point, Trader subsequently placed appellant under arrest for driving without an operator's license.
 {¶ 4} Trader checked the license plates, but could not ascertain the vehicle's owner. Trader asked appellant who owned the vehicle and appellant stated it belonged to a friend of the passenger. Trader sought to confirm this with the passenger, however, she provided a completely different story.
 {¶ 5} Trader then contacted Huggins to assist him with the situation. Upon arrival, Huggins placed Estes into his cruiser while Trader performed a search of the vehicle incident to the arrest.
 {¶ 6} While in his cruiser, Huggins gave Estes her Miranda
warnings. Testimony indicated that during his search of the vehicle, Trader found a "crack pipe" wedged between the passenger seat and the console of the vehicle. Estes subsequently pulled a bag of crack from her pants and gave it to Huggins. Huggins secured the bag, turned it over to Trader, and began questioning Estes.
 {¶ 7} Testimony established that, after receiving his Miranda warnings, appellant stated that he and Estes had driven to Cleveland to purchase crack cocaine in interest of selling it in Erie, Pennsylvania. Appellant further stated that he had done this one time in the past and "was willing to do anything he could to get out of jail that evening." Trader and appellant discussed the possibility of making a "controlled buy;" however, Trader was unable to make such an arrangement.
 {¶ 8} Ultimately, appellant and Estes were transported to the Ashtabula County Sheriff's Department. Trader later attempted to obtain a written statement from appellant, but appellant declined.
 {¶ 9} Appellant was charged with one count of possession of crack cocaine, a felony of the third degree. Appellant pleaded not guilty to the charge and filed a motion to suppress evidence which was subsequently denied. Appellant also filed a motion to dismiss based on a purported speedy trial violation. The motion was heard and denied.
 {¶ 10} The matter was tried to a jury who found appellant guilty. Appellant was sentenced to a term of two years imprisonment. The current appeal followed.
 {¶ 11} In his first assignment of error, appellant challenges the trial court's denial of his motion to suppress evidence. Appellant contends that the trial court erred by failing to suppress evidence issuing from an improper traffic stop. Particularly, appellant argues that the arresting officer initiated the underlying traffic stop based upon an alleged traffic violation which was never defined. Appellant contends, in essence, the arresting officer had neither probable cause nor a reasonable, articulable suspicion that criminal activity was afoot. Thus, appellant concludes, traffic stop was unconstitutional and the evidence flowing therefrom was tainted fruit from the poisonous tree.
 {¶ 12} The standard of review on a motion to suppress is de novo. State v. Foster, 11th Dist. No. 2003-L-039, 2004-Ohio-1438, at ¶ 6. Specifically, the reviewing court determines whether the trial court's findings are supported by competent, credible evidence. State v. Hrubik (June 30, 2000), 11th Dist. No. 99-A-0024, 2000 Ohio App. LEXIS 2999, at 4. This standard is proper because during a hearing on a motion to suppress, the trial court, as the trier of fact, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Hocker, 7th Dist. No. 03 BE 11, 2003-Ohio-5146, at 5. After accepting the facts as true, this court independently determines whether the trial court met the applicable legal standards. Id.
 {¶ 13} The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." When an officer stops a motor vehicle and detains its occupants, he has seized it and its occupants within the meaning of the Fourth Amendment. See Terryv. Ohio (1968), 392 U.S. 1, 16. Under the circumstances, there is no question that the Fourth Amendment applies because appellant, as a motorist, was stopped in transit and detained.
 {¶ 14} Although the Fourth Amendment requires a warrant from a neutral magistrate, it does admit to some exceptions. For instance, a police officer may, under limited circumstances, detain an individual and conduct a brief investigatory stop with neither a warrant nor probable cause. See, Terry, supra. In order for an investigatory stop to fall within the ambit ofTerry, the officer must be able to cite articulable facts that give rise to a reasonable suspicion that the individual is currently engaged in or is about to engage in criminal activity. Id. at 21. The validity of an investigative stop must be viewed in light of the totality of the circumstances. State v. Namey
(Oct. 6, 2000), 11th Dist. No. 99-A-0003, 2000 Ohio App. LEXIS 4652, at 11.
 {¶ 15} If the specific and articulable facts demonstrate to the officer that the driver of an automobile may be committing a criminal act, which includes violation of a traffic law, an officer can justifiably make an investigatory stop. State v.Norman (1999), 136 Ohio App.3d 46, 53. Where an officer has observed a traffic violation, therefore, the stop is constitutionally valid. Id.
 {¶ 16} At the suppression hearing, Trooper Huggins testified that while engaging in criminal interdiction patrol,[1] he observed appellant's vehicle which "was hanging pretty low." Huggins notified his partner, Trooper Trader, that the vehicle was approaching him and advised Trader to check the vehicle. Trader testified that a few seconds later a vehicle meeting Huggins' description passed him. Trader stated that he could hear the exhaust from his cruiser and the vehicle appeared to be moving somewhat slower than the rest of traffic; moreover, Trader noted that the exhaust was "real low. It wasn't the muffler. It's the piece from the engine going back to the muffler, the exhaust pipe." Trader then initiated the traffic stop.
 {¶ 17} Courts have held that a traffic stop based on a defective exhaust is reasonable. See Mentor v. Gedeon (Mar. 27, 1992), 11th Dist. No. 91-L-100, 1992 Ohio App. LEXIS 1580, at 4;State v. Richmond (Sept. 14, 1990), 11th Dist. No. 90-P-2152, 1990 Ohio App. LEXIS 4008, at 4-5; State v. Downen (Jan. 12, 2000), 7th Dist. No. 97-BA-53, 2000 Ohio App. LEXIS 300, at 7. As such, Trader had a reasonable and articulable suspicion that a traffic violation was occurring in his presence and therefore was justified in making the stop. The lower court believed the officers' testimony and there is competent, credible evidence to support this belief. Thus, we shall not disturb the trial court's decision denying appellant's motion to suppress the evidence resulting from the investigative stop.
 {¶ 18} Appellant nevertheless contends that the trial court erred because the state failed to prove that the vehicle's exhaust system was defective. In effect, appellant argues that the constitutionality of the stop depends upon the state actually proving the traffic violation on which the officers' initial suspicion was based. We disagree.
 {¶ 19} In order to conduct an investigatory stop, an officer need only reasonable suspicion of criminal activity. Reasonable suspicion means the officer, "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the stop]."State v. Bobo (1988), 37 Ohio St.3d 177, 178, citing Terry,
supra, at 21-22. Here, the officers mutually noticed the threadbare condition of the vehicle's exhaust system. Recognizing a potential traffic violation, Trader initiated the stop. Such was sufficient to create reasonable suspicion.
 {¶ 20} Appellant's argument misunderstands the nature of the suppression hearing. Specifically, the issue at the suppression hearing was whether the investigatory stop was proper. As already indicated, reasonable suspicion is the fundamental criterion for measuring the propriety of an investigatory stop. Thus, the issue of whether appellant had a defective exhaust system was irrelevant. The proper inquiry, and the inquiry in which the lower court engaged, was whether the officers had reasonable, articulable facts justifying their suspicion regarding the traffic violation. The lower court answered this question in the affirmative. After reviewing the record, we find that the lower court's findings are supported by competent, credible evidence.
 {¶ 21} Appellant's first assignment of error is without merit.
 {¶ 22} In his second assignment of error, appellant argues that the trial court erred when it denied his motion to dismiss based upon the state's violation of appellant's right to a speedy trial.
 {¶ 23} R.C. 2945.71, et seq., Ohio's speedy trial statutes, were enacted as a means of giving effect to the constitutional guaranties to a speedy trial set forth in the Sixth Amendment to the United States Constitution. State v. Ritter (Dec. 17, 1999), 11th Dist. No. 98-A-0065, 1999 Ohio App. LEXIS 6100, at 6-7. R.C. 2945.71(C)(2) requires a person charged with a felony be brought to trial within two hundred seventy days of his arrest. Moreover, each day that an accused is held in jail in lieu of bail counts as three days when computing the time that the state has to bring a defendant to trial. See, R.C.2945.71(E).
 {¶ 24} That said, R.C. 2945.72 sets forth an exclusive list of circumstances which toll the time when calculating the speedy trial date under R.C. 2945.71. R.C. 2945.72 provides, in relevant part:
 {¶ 25} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial may be extended only by the following:
 {¶ 26} "* * *
 {¶ 27} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 {¶ 28} "* * *
 {¶ 29} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion [.]"
 {¶ 30} In the matter sub judice, appellant was arrested on June 28, 2003. Appellant's speedy trial time began ticking on the following day, June 29, 2003. See, Crim.R. 45; State v. Stamps
(1998), 127 Ohio App.3d 219, 223. Because appellant was charged with a felony, the state was statutorily obligated to bring appellant to trial within two hundred seventy days of June 29, 2003. However, both parties agree that appellant was in custody during all relevant times and therefore the "triple count" provision of R.C. 2945.71(E) applies. Hence, under the circumstances, the state had only ninety days within which to bring appellant to trial.
 {¶ 31} Appellant's trial commenced on November 4, 2002, one hundred twenty eight days after the speedy trial clock began to run, well beyond the ninety day limit. However, the time for bringing appellant to trial was extended by operation of R.C.2945.72(E) and (H). That is, R.C. 2945.72(E) tolled the speedy trial time during the period between September 9, 2002 through October 22, 2002, the forty-four day period during which appellant's motion to suppress was pending. State v. Burdick
(May 26, 2000), 11th Dist. No. 98-G-2209, 2000 Ohio App. LEXIS 2264, at 20. Moreover, within this same time frame, the trial court granted a continuance to the state based upon the unavailability of Trooper Trader.[2]
 {¶ 32} As indicated supra, appellant filed a pretrial motion to suppress on September 9, 2002. This motion necessarily tolls the time in which appellant was to be tried pursuant to R.C.2945.72(E). Burdick, supra, at 21. Moreover, the court granted the state's motion for a continuance due to a primary witness' unavailability. It is well settled that a continuance granted other than upon the accused's own motion must be both reasonable and necessary before the time for a speedy trial is properly tolled under R.C. 2945.72(H). State v. Saffell (1988),35 Ohio St.3d 90, 91.
 {¶ 33} The state sought a single continuance based on the unavailability of Trooper Trader. For obvious reasons, Trader was a crucial prosecution witness as the officer who effectuated the initial traffic stop. We have previously recognized that a motion for continuance filed by the state may be reasonable if a police officer who is scheduled to testify will be unavailable on a trial date due to a vacation or for other good cause shown.Burdick, supra, at 24, citing State v. Ritter (Dec. 17, 1999), 11th Dist. No. 98-A-0065, 1999 Ohio App. LEXIS 6100, at 13. Under the circumstances, the continuance of appellant's hearing due to the unavailability of Trooper Trader was both reasonable and necessary.
 {¶ 34} Subtracting the forty-four days from the one hundred twenty eight days demonstrates that the state brought appellant to trial within eighty-four days: This time frame falls directly within the ninety day speedy trial window.
 {¶ 35} However, appellant contends that the trial court took an unreasonable eleven days to rule on his motion after the hearing. Appellant arbitrarily submits that the court should have ruled upon the motion in seven days. Appellant's contention is without merit. The period of time a trial court may have to rule on a motion is analyzed in terms of reasonableness. State v.McNutt (Sept. 20, 1996), 11th Dist. No. 96-A-0019, 1996 Ohio App. LEXIS 4095, at 4. Consequently, each case must be viewed on its own terms and within its own context. Under the circumstances, the eleven day period between the suppression hearing and the court's judgment entry was reasonable and demonstrates that the court gave due consideration to the motion without undue delay. Therefore, appellant's second assignment of error is without merit.
 {¶ 36} In his third assignment of error, appellant contends that he received ineffective assistance of counsel. In particular, appellant alleges that his trial counsel was ineffective for failing to object to the introduction of a videotape exhibit and then playing the videotape for the jury during cross-examination.
 {¶ 37} To establish a claim for ineffective assistance of counsel, an appellant must prove that counsel's performance fell below an objective standard of reasonable representation and that prejudice arises from counsel's performance. State v. Bradley
(1989), 42 Ohio St.3d 136. This requires a demonstration that counsel's errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. State v.Goodwin, 84 Ohio St.3d 331, 334, 1999-Ohio-356, quotingStrickland v. Washington (1984), 466 U.S. 668, 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, supra, at 686.
 {¶ 38} When reviewing counsel's performance at trial, there is a strong presumption that defense counsel's actions were part of a valid trial strategy. State v. Cash, 11th Dist. No. 2001-A-0085, 2003-Ohio-2536, at ¶ 16. Consequently, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."Strickland, supra, at 690.
 {¶ 39} Appellant first argues that his trial counsel's assistance was ineffective due to counsel's failure to object to the state's introduction of the police cruiser videotape which recorded the events following the traffic stop. Appellant argues that the state failed to properly identify and authenticate the tape pursuant to Evid.R. 901; further, testimony established that, subsequent to appellant's arrest, the tape was somehow damaged by heat. As such, the video images and audio clarity were somewhat impaired. From this, appellant contends that even if counsel had objected, Trooper Trader could not validate that the tape was a true and accurate depiction of the events described in his testimony. Appellant concludes that such failings were unreasonable and affected the outcome of the trial to his prejudice.
 {¶ 40} Initially, failure to make an objection does not constitute ineffective assistance of counsel per se, as that failure may be justified as a tactical decision. State v. Gumm,73 Ohio St.3d 413, 428, 1995-Ohio-24. However, this rule is irrelevant in the current matter because Trooper Trader did identify and authenticate the tape that was introduced in court. On direct examination, the following colloquy occurred:
 {¶ 41} "[Prosecutor]: And did anything — did you watch that video tape?
 {¶ 42} "[Trader]: I just watched that video tape for the first time yesterday.
 {¶ 43} "[Prosecutor]: This happened back in June. Why just yesterday?
 {¶ 44} "[Trader]: After the traffic stop, when I had gone home for the evening, I noticed that the tape was empty, so I replaced it with a fresh tape. Our VCR's [sic] are in our trunks in a locked steel box. I placed the tape with this on it inside on the passenger side and secured my vehicle and I was working 3 P the next day. When I got in my vehicle, the tape was heat damaged and we had to make some repairs to the tape.
 {¶ 45} "[Prosecutor]: So, just recently you were able to make repairs to the tape?
 {¶ 46} "[Trader]: Correct.
 {¶ 47} "[Prosecutor]: So, you made a new tape?
 {¶ 48} "[Trader]: No, we found out from our district staff that they could pull the tape out of this cassette and actually put the tape in another cassette so it would go into a VCR.
 {¶ 49} "[Prosecutor]: Trooper, I'm showing you what has been marked State's Exhibit Number 5. Can you identify that for the record?
 {¶ 50} "[Trader]: Yes, this is the copy of the copy.
 {¶ 51} "[Prosecutor]: Copy of the copy?
 {¶ 52} "[Trader]: Yes, I made this copy just for Court. This is from the original that we salvaged."
 {¶ 53} Trooper Trader testified that the tape admitted at trial was a copy of the original tape from his cruiser. Trader subsequently indicated that the copy was consistent with what he had viewed in the original. Consequently, the tape was properly identified and counsel's failure to object on this basis does not constitute ineffective assistance. Moreover, even if the state failed to properly identify the videotape, counsel's failure to object would not rise to the level of ineffective assistance because this omission is apparently strategic.
 {¶ 54} On cross-examination, appellant's counsel played the videotape to the court.[3] Counsel then took Trader to task on the poor quality of the tape's audio. Counsel's cross-examination pointed out that appellant's alleged confession was inaudible due to the poor quality of the tape's audio. From this, appellant's counsel was attempting to extract the inference that appellant actually made no confession and thereby create reasonable doubt as to Trader's credibility. By showing the tape, it appears that counsel was trying to demonstrate that the only independent evidence of the arrest was questionable. In doing so, he laid the foundation for reasonable doubt regarding the troopers' testimony.
 {¶ 55} Appellant's failure to object to the introduction of the videotape was a result of a sound trial strategy designed to impugn Trooper Trader's credibility and undermine his testimony. Counsel's conduct involved a legitimate trial strategy and did not fall below prevailing professional norms. Counsel's assistance was not ineffective and therefore appellant's third assignment of error is overruled.
 {¶ 56} In his fourth assignment of error, appellant argues that the trial court committed plain error by failing to prohibit testimony regarding appellant's post-arrest silence.
 {¶ 57} A review of the transcript shows that appellant did not object to this line of questioning. As appellant acknowledges in his assigned error, he waived his right to contest the admission of the testimony absent plain error.
 {¶ 58} Plain error is limited to exceptionally rare cases in which the error, left unobjected to at the trial court, "`rises to the level of challenging the legitimacy of the underlying judicial process itself.'" In re Lemon, 5th Dist. No. 2002-CA-00098, 2002-Ohio-6263, at ¶ 29, citing Goldfuss v.Davidson, 79 Ohio St.3d 116, 122, 1997-Ohio-401.
 {¶ 59} The doctrine of plain error has three components: First, there must be an error or deviation from a legal rule; next, the error must be plain, i.e., an obvious defect in the trial proceedings. Finally, the error must have affected a "substantial right," meaning the error must have affected the final outcome of the case. An error satisfying these three requirements may be corrected if the reviewing court finds that a correction is needed to "prevent a manifest miscarriage of justice." See, e.g., State v. Shaffer, 11th Dist. No. 2002-P-0133, 2004-Ohio-336, at ¶ 16.
 {¶ 60} Appellant contends that the court erred by failing to exclude testimony elicited by the prosecution from Trooper Trader regarding appellant's post-arrest silence. Appellant cites the following exchange between the prosecutor and Trooper Trader:
 {¶ 61} "[Prosecutor]: "* * *. Did you ask [appellant] if he wanted to make a statement?
 {¶ 62} "[Trader]: Yes I did.
 {¶ 63} "[Prosecutor]: And what did he say?
 {¶ 64} "[Trader]: He just said no.
 {¶ 65} "[Prosecutor]: Again, did he give you a reason?
 {¶ 66} "[Trader]: I believe his exact words were, `If you can't do anything to get me out of here, I'm not going to do anything to help you.' Something real close along those lines.
 {¶ 67} "[Prosecutor]: Is that also in your report that you generated on June 28th?
 {¶ 68} "[Trader]: Okay, it says June 29th at 20:52, which is 8:52 P.M., `I met with the suspect Jackson at the Geneva City Jail. I gave him a Miranda sheet, which he read. I then asked if he would like to give me written statement regarding the incident from yesterday.' [sic] Actually, it says `form yesterday.' Typo. `He stated that he did not. That I wasn't doing anything to get him out of jail, so he wasn't going to give me a statement. He was then issued his charges for' — can I continue with what this says?
 {¶ 69} "[Prosecutor]: No, that's fine.
 {¶ 70} "The Court: Yea, okay, that's enough."
 {¶ 71} In Doyle v. Ohio (1976), 426 U.S. 610, the Supreme Court of the United States explained that the Miranda warnings convey an implied assurance to the accused that the state will not use a defendant's silence against him at trial. Id. at 618. Commentary by prosecutors regarding a defendant's post arrest silence has always been viewed with a jaundiced eye. Justice disfavors such comments because they raise an inference of guilt from a defendant's decision to remain silent. In essence, "such comments penalize a defendant for choosing to exercise a constitutional right. Prosecutors must therefore take care not to equate the defendant's silence to guilt." State v. Thompson
(1987), 33 Ohio St.3d 1, 4.
 {¶ 72} Although the prosecutor referenced appellant's silence and asked Trader whether appellant provided a reason for his silence, the point was not belabored. In fact, according to Trader, appellant was not entirely silent. To wit, subsequent to his Miranda warnings, appellant indicated that he would not give a statement unless Trader could arrange his release from jail. Appellant volunteered this information which was the thematic thrust of the courtroom exchange between the prosecutor and Trader. In any event, the court prevented any further, potentially untoward references to appellant's silence by thwarting this line of questioning. In sum, we find no Doyle
violation.
 {¶ 73} However, even assuming arguendo that a Doyle
violation occurred, any error was harmless. Specifically, not all constitutional errors mandate a reversal. If a court finds aDoyle violation, the court must then determine if the error is harmless under the test set forth under Chapman v. California
(1967), 386 U.S. 18. State v. Johnson (July 3, 1997), 11th Dist. No. 96-L-012, 1997 Ohio App. LEXIS 2985, at 15. The standard set forth under Chapman requires the state to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" in order for a constitutional error to be ignored as non-prejudicial. Chapman, supra, at 24.
 {¶ 74} Further, in State v. Williams (1983),6 Ohio St.3d 281, paragraph six of the syllabus, the Supreme Court of Ohio held that constitutional errors are harmless beyond a reasonable doubt "if the evidence, standing alone, constitutes overwhelming proof of the defendant's guilt." This rule was employed in assessing the prejudicial effect of Doyle errors in State v.Thompson (1987), 33 Ohio St.3d 1.
 {¶ 75} In the current matter, the state presented considerable evidence regarding the circumstances and nature of the charge. At trial, Troopers Trader and Huggins recapitulated the facts underlying the arrest. Testimony established that appellant was pulled over due to a reasonable suspicion that a traffic violation occurred. Once pulled over, Trader determined that appellant had neither a driver's license nor registration; during the traffic stop, appellant indicated that he had never obtained a driver's license. Thus, Trader placed appellant under arrest for no operator's license. After calling Huggins to sit with the passenger, Trader conducted a search incident to appellant's arrest wherein he recovered a "crack pipe" from the vehicle. In the meantime, the female passenger in the vehicle turned over a plastic bag which she claimed was crack given to her when the vehicle was stopped. Trader returned to appellant and subsequent to receiving his Miranda warnings, appellant provided a confession regarding his purchase of the cocaine.
 {¶ 76} To be sure, the prosecutor's brief probe into the reasons why appellant opted to exercise his right to remain silent was not a paragon of propriety. Nevertheless, the discussion was quickly halted and its content does not indicate an intent to extract an inference of guilt from appellant's silence. In fact, the ostensible point of the questioning was to demonstrate that although appellant chose not to provide a statement at that time, he might do so if Trooper Trader could somehow "help him." In sum, any comments regarding appellant's post-Miranda silence were harmless because the evidence, by itself, provided overwhelming evidence of appellant's guilt.
 {¶ 77} Therefore, appellant's fourth assignment of error lacks merit.
 {¶ 78} In his fifth assignment of error, appellant argues that his conviction is against the manifest weight of the evidence. When reviewing a manifest weight claim, an appellate court examines "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. A court's power to grant a new trial should be utilized only in extraordinary circumstances where the evidence weighs heavily against the conviction. Id.
 {¶ 79} As discussed in appellant's fourth assignment of error, review of the record demonstrates there was substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. See, e.g.State v. Sims, 11th Dist. No. 2001-L-081, 2003 WL 169047, at ¶ 32. Although appellant maintained his innocence, the state offered a competing view supported by the testimony of the Troopers at the scene. Despite this tension, a conviction is not against the manifest weight simply because a jury believes the prosecution's testimony. State v. Beesler, 11th Dist. No. 2002-A-0011, 2003-Ohio-2814, at ¶ 22. Thus, appellant's fifth assignment of error is without merit.
 {¶ 80} In his sixth assignment of error, appellant contends that the trial court erred by imposing a sentence greater than the minimum available sentence in violation of R.C. 2929.14(B).
 {¶ 81} Pursuant to R.C. 2953.08(G)(2), we review a felony sentence de novo. State v. Caldwell, 11th Dist. No. 2002-L-142, 2003-Ohio-6964, at ¶ 9. An appellate court will not overturn a sentence unless there is clear and convincing evidence that the record does not support the court's findings or is otherwise contrary to law. R.C. 2953.08(G)(2)(a) and (b). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established."State v. Conte, 11th Dist. No. 2000-L-104, 2001-Ohio-8697, at 5.
 {¶ 82} Appellant argues that the court committed reversible error by imposing more than the minimum sentence without complying with R.C. 2929.14(B). Where a defendant has not served a previous prison term and a trial court imposes a sentence beyond the statutory minimum, the court must find on record that the shortest authorized term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender. R.C. 2929.14(B). It is well-settled that the sentencing court is not required to provide reasons for its finding under R.C. 2929.14(B). State v.Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110, at syllabus. Rather, the court must merely state that one or both of the findings set forth in R.C. 2929.14(B) justify the imposition of a sentence greater than the minimum. Caldwell, supra, at ¶ 36. However, when imposing a sentence beyond the statutory minimum under R.C.2929.14(B), the trial court must make its statutorily sanctioned findings at the sentencing hearing. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, at paragraph two of the syllabus.
 {¶ 83} In the current matter, the court sentenced appellant to two years following his conviction for possession of crack cocaine, a felony of the third degree. Pursuant to R.C.2929.13(F), appellant was subject to a mandatory prison term ranging from one to five years. See, R.C. 2929.13(F)(5); R.C.2929.14(A). Because the court imposed greater than the minimum sentence, and appellant had not previously served a prison term, it was required to make one or both of the findings under R.C.2929.14(B). To this end, the court stated:
 {¶ 84} "* * * in trying to decide a penalty that I feel is commensurate with the seriousness of the crime and not demeaning to the seriousness of what happened here, it is my decision that you should be sentenced to the Lorain Correctional Institute at Grafton, Ohio, to serve a sentence of two years."
 {¶ 85} This finding essentially corresponds to the statutory language set forth under R.C. 2929.11(B)[4] rather than that of R.C. 2929.14(B). However, the court's finding serves to indicate that the "shortest authorized prison term would demean the seriousness of the offender's conduct."[5] R.C.2929.14(B). Therefore, appellant's sixth assignment of error is overruled.
 {¶ 86} For the foregoing reasons, appellant's six assignments of error are overruled and the judgments of the Ashtabula County Court of Common Pleas are therefore affirmed.
Ford, P.J., Grendell, J., concur.
[1] Trader described criminal patrol interdiction as "[b]asically, nothing different than regular patrol, however, you spend a little more time talking to occupants of vehicles instead of just writing tickets and getting them on their way. Also looking for violations that aren't so obvious, like excessive speed we would be looking for, following too close, slow speed and any vehicle defects."
[2] The court granted the state a continuance because Trooper Trader, a key witness, was unavailable due to certain training in which he was participating; thus, the hearing was moved from October 2, 2002 to October 11, 2002.
[3] Appellant also argues that playing the tape was "the most deficient performance imaginable." However, appellant fails to justify this conclusion. As far as we can discern and as the following analysis supports, playing the videotape was a highly viable strategy for attacking the Trooper's credibility.
[4] This statutory subsection requires that a felony sentence be reasonably calculated to achieve the purposes of felony sentencing "commensurate with and not demeaning to the seriousness of the offender's conduct * * *." R.C. 2929.11(B)
[5] Although we find the trial court's discussion adequate to meet the mandates of R.C. 2929.14(B), we caution the trial court to develop its findings in a manner which more closely corresponds to the statutory language set forth in R.C.2929.14(B). Furthermore, as a court generally speaks through its judgment entry, we urge the court to provide a clearer explication of its considerations within the judgment entry.