OPINION
{¶ 1} Appellant, Demond C. Duncan, appeals the order of the Lake County Court of Common Pleas denying his motion to suppress evidence. At issue is whether the warrantless search of his vehicle, which disclosed a stolen, loaded 9 mm. semiautomatic pistol, was authorized. For the reasons that follow, we affirm.
 {¶ 2} Appellant was charged in a three-count indictment with one count of having weapons while under disability in that he was previously convicted of illegal possession or trafficking in a drug of abuse, to-wit: drug abuse, in violation of R.C. *Page 2 2923.13(A)(3), a felony of the third degree; one count of carrying concealed weapons, in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; and one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fourth degree.
 {¶ 3} Appellant filed a motion to suppress. The parties briefed the issues and the court conducted a suppression hearing. The evidence revealed that on October 5, 2005, at approximately 1:00 a.m., Sgt. Michael Planisek ("Planisek"), a twenty-five year veteran of the Willoughby Hills Police Department, was on duty as the shift supervisor. He was in uniform and on patrol in his marked police cruiser at the Shell gas station, located on Chardon and Bishop Roads in Willoughby Hills, when he heard a loud thumping noise approaching northbound on Bishop Road. The noise was coming from a light blue 1989 Nissan which he saw pull up to and stop at the traffic light.
 {¶ 4} Planisek exited the gas station and approached appellant's vehicle. He saw appellant's windshield was cracked from the passenger side all the way over to the driver's side in the middle of the window. He also saw the front driver's side tire was flat and there was body damage to the front end on the driver's side.
 {¶ 5} Planisek positioned his cruiser directly behind appellant. He activated his overhead lights causing appellant to pull into a BP gas station on Bishop Road.
 {¶ 6} Planisek exited his cruiser and approached appellant's vehicle on the driver's side. Appellant appeared extremely nervous and asked what he did wrong. Planisek asked him for his driver's license. Appellant again asked what he did wrong. Planisek told him he stopped him for operating an unsafe motor vehicle, and again asked appellant for his license.
 {¶ 7} Due to the damage to the vehicle, Planisek asked appellant if he had been in an accident, and appellant said no. He said he had been at BW-3 where his tire had *Page 3 
gone flat. BW-3 is a restaurant in Lyndhurst on Mayfield Road. It has a large, well-lit parking lot with ample space to change a tire. Planisek asked him why he had not changed the tire, to which appellant responded he did not have a spare in his car.
 {¶ 8} BW-3 is 4.8 miles from the location where Planisek stopped appellant. He told appellant he would check with neighboring police departments to see if they were investigating a recent hit-skip accident.
 {¶ 9} Planisek went to his car and asked dispatch to call surrounding police departments to make this inquiry. Appellant was still acting extremely nervous and agitated in his car. He continually looked back at Planisek's cruiser. Appellant was waiving his arms and talking to himself and then on his cell phone.
 {¶ 10} Officer Ronald Parmertor ("Parmertor") of the Willoughby Hills Police Department arrived on the scene to provide backup. Planisek told him he was going to impound the vehicle because appellant had been operating an unsafe vehicle.
 {¶ 11} The officers approached appellant. Planisek asked him to exit his vehicle, but he refused. Planisek asked him again, and said they were going to impound his car because it was unsafe. Appellant began arguing with Planisek and again refused to exit his vehicle. The officers had to open his door and physically remove him from his car. Planisek told him to turn toward his vehicle and he refused. They had to physically turn him around. Planisek told him to put his hands behind his back and he refused. The officers had to physically take his hands and put them behind his back so they could pat him down and handcuff him. Planisek placed handcuffs on appellant and then frisked him. He was then placed in the rear of Parmertor's vehicle. Planisek issued a citation to appellant for operating an unsafe vehicle and not wearing a seatbelt, and told appellant he was under arrest for obstructing official business. *Page 4 
 {¶ 12} While Planisek was with appellant in the police cruiser, Parmertor searched appellant's vehicle. He searched the area of the driver's seat. He then searched both rear seats. He got out of the car and went to the front passenger area. He searched the glove compartment and passenger seat. Under the front passenger seat, he found a loaded 9 mm. handgun. He searched the trunk and found only miscellaneous items of no value. The only valuable item he found during the search was the handgun. He testified his search was an inventory search and a search pursuant to appellant's arrest for obstructing official business. After Parmertor discovered the weapon, Planisek asked appellant if he had a permit to carry the gun and he said no. Planisek advised appellant he would also be charged with having the weapon.
 {¶ 13} Planisek testified he decided to impound the vehicle because appellant had been operating an unsafe vehicle on the street for almost five miles. He testified the car could not be driven safely with a flat tire because it could cause the vehicle to go out of control. He testified Willoughby Hills' police policy authorizes vehicle impoundment when a vehicle, due to faulty equipment, is a hazard if operated.
 {¶ 14} The only police department that responded to Planisek's inquiry regarding any recent hit-skip cases was Gates Mills. That department advised they were investigating a hit-skip and looking for a light colored vehicle. Officers from Gates Mills Police Department inspected the vehicle at the scene, but determined it was not the vehicle they were looking for.
 {¶ 15} Appellant was taken to the police station where he was booked. It was subsequently discovered that the gun was stolen. *Page 5 
 {¶ 16} Planisek testified that he assumed the officer assigned to tow the vehicle would complete the inventory form, and that officer assumed Planisek would do it. As a result, the form was not completed due to this miscommunication, which Planisek testified was his responsibility.
 {¶ 17} The officers testified that the determination whether a vehicle is unsafe is part of basic police training, and that this determination is within the officer's discretion.
 {¶ 18} The trial court found that driving appellant's vehicle on a public street with a flat tire presented a hazard to the public since a driver's ability to control a car in such circumstances would be hindered. As a result, appellant was driving an unsafe vehicle and the officers were authorized to stop him. Further, appellant drove his vehicle for five miles and only stopped when ordered to do so by the police. There was thus a reasonable likelihood that if the car was not impounded, appellant would return and drive the car away, further endangering the public. In these circumstances, the court found Planisek had the right to impound the car. The court did not find credible the defense witnesses who testified that the vehicle was not unsafe, and that the officers should have made arrangements with BP to take responsibility for appellant's vehicle and let appellant go.
 {¶ 19} The trial court also found that after the officers told appellant they were going to impound his car, he was uncooperative and refused to follow their orders. He obstructed the officers' ability to proceed with impounding the car. When officers impound a vehicle, they have the right to perform an inventory search. The purpose is to secure valuables and to protect the police and towing company from complaints that valuables were taken. Planisek admitted that, due to a miscommunication on his part, an inventory form was not completed. Willoughby Hills' police policy gave the officers *Page 6 
authority to impound the vehicle and perform an inventory search. The lack of a completed inventory form did not negate the officers' authority to conduct an inventory search because the only noteworthy item in the vehicle was the firearm. Based on these findings, the court overruled the motion to suppress.
 {¶ 20} Following the suppression hearing, appellant entered a plea bargain with the state, pursuant to which he agreed to plead no contest to carrying concealed weapons and receiving stolen property. He was sentenced to fourteen months in prison on the carrying concealed weapons charge and twelve months on the receiving stolen property charge, the two sentences to run concurrent.
 {¶ 21} Appellant now appeals. He asserts the following assignment of error:
 {¶ 22} "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO SUPPRESS AND RULED THAT MR. DUNCAN'S CAR WAS REASONABLY SEARCHED INCIDENT TO A LAWFUL TOW OR IMPOUNDMENT."
 {¶ 23} On review of a trial court's ruling on a motion to suppress, an appellate court determines whether the trial court's findings are supported by some competent, credible evidence. An appellate court may not disturb a trial court's decision on a motion to suppress where some competent, credible evidence supports its decision. State v.Retherford (1994), 93 Ohio App.3d 586, 592. In determining a motion to suppress, the trial court serves as the trier of fact and determines the credibility of the witnesses and weight of the evidence. The appellate court is required to accept the trial court's factual findings as true, and determine, without deference to the trial court, whether the court met the appropriate legal standard. State v. Jackson, 11th Dist. No. 2003-A-2005, 2004-Ohio-2920, at ¶ 12. *Page 7 
 {¶ 24} The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution require police to obtain a search warrant based on probable cause prior to conducting a search unless the search falls within an exception to this requirement.Katz v. United States (1967), 389 U.S. 347; see, also, State v.Totten (Feb. 15, 2001), 10th Dist. No. 00AP-535, 2001 Ohio App. LEXIS 524, *5-*6. Two exceptions to the warrant requirement relevant here are: 1. a routine inventory search of a lawfully impounded vehicle and 2. a search incident to a lawful arrest.
 {¶ 25} Appellant does not dispute the officers were authorized to stop him. He conceded at the suppression hearing that they had probable cause and sufficient articulable facts to justify a stop under Terry v.Ohio (1968), 392 U.S. 1. Instead, he argues that the officers were not authorized to impound his vehicle. We disagree.
 {¶ 26} An inventory search of an impounded vehicle is a well-recognized exception to the warrant requirement. Colorado v.Bertine (1987), 479 U.S. 367, 371. A routine search of an impounded vehicle is not unreasonable under the Fourth Amendment when it is performed pursuant to a standard police procedure and when the evidence does not demonstrate the procedure involved is a mere pretext for an evidentiary search of the impounded vehicle. South Dakota v.Opperman (1976), 428 U.S. 364, 372.
 {¶ 27} Once a vehicle is impounded, police may conduct an inventory search provided it is done in good faith and in accord with reasonable standardized procedures or established routine. State v. Hathman (1992),65 Ohio St.3d 403, paragraph one of the syllabus. *Page 8 
 {¶ 28} The inventory exception to the warrant requirement exists in order to protect the owner's property while in police custody and to insure against claims of lost or stolen property. Florida v. Wells
(1990), 495 U.S. 1, 4.
 {¶ 29} Appellant argues that, pursuant to the decision of the Second Appellate District in State v. Taylor (1996), 114 Ohio App.3d 416, the officers were not authorized to impound his vehicle. In that case the court held: "A car may be impounded if * * * the occupant of the vehicle is arrested, or when impoundment is otherwise authorized by statute or municipal ordinance." Id. at 422. Thus, under Taylor, a vehicle may be impounded: 1. when the occupant of the vehicle has been arrested or 2. when impoundment is otherwise authorized by law.
 {¶ 30} The officers here testified that the vehicle was impounded because Planisek determined the vehicle was in violation of Sec. 337.01(a) of the Willoughby Hills Traffic Code. That section provides: "No person shall drive or move * * * on any street any vehicle * * * which is in such unsafe condition as to endanger any person or property."
 {¶ 31} Appellant argues that the ordinance does not provide any objective criteria by which an officer can determine if the vehicle is unsafe. However, Ohio courts have held that "when considering whether there existed a reasonable suspicion for the stop * * * of an automobile, a trial court must look at the totality of the circumstances, as viewed in the eyes of one versed in the field of law enforcement, and determine whether there is at least a fair probability that the driver violated the law and/or that the vehicle is unsafe for operation." City of BayVillage v. Dillon (Oct. 5, 1995), 8th Dist. No. 68885, 1995 Ohio App. LEXIS 4455, *5-*6. *Page 9 
 {¶ 32} Further, courts have held that when a vehicle does not comply with safety standards promulgated by law, it will be considered unsafe. In State v. Repp, 5th Dist. No. 01-CA-11, 2001-Ohio-7034, 2001 Ohio App. LEXIS 6026, the officer stopped the defendant for driving a vehicle he considered was unsafe in that it had a cracked windshield. At issue was an ordinance identical to the one involved here. The court noted that the ordinance mirrored R.C. 4513.02(A), which provides that no person shall drive any vehicle "which is in such unsafe condition as to endanger any person." In Repp the officer testified that he stopped the defendant because his car had a cracked windshield and therefore was unsafe. The court cited Ohio Adm. Code 4501:2-1-11 concerning motor vehicle equipment safety standards: "Every motor vehicle shall be equipped with safety glass * * *. Such glass shall be free of * * * cracks * * *." Id. at *6-*7. The court held the promulgation of this regulation was authorized by R.C. 4513.02, and carried the full force and effect of law. The court held that the regulation required that windshield glass be free of cracks, and that since there was a crack in the defendant's windshield, the defendant's vehicle was in violation of the law. Id.
 {¶ 33} The holding in Repp applies with greater force here because, in addition to the cracked windshield, appellant's vehicle had a flat tire. In Dillon, supra, the Eighth Appellate District held that where the defendant was driving a motor vehicle with a flat tire, the officer had "reasonable suspicion [the defendant] was driving a[n] automobile in an unsafe condition in violation of R.C. 4513.02 * * *." Id. at *6. As a result, we hold that appellant's vehicle was unsafe.
 {¶ 34} Appellant argues that even if his car was unsafe, Sec. 337.01(a) of the Willoughby Hills Traffic Code merely prohibited him from driving it on the public streets, and did not authorize the officers to impound it. He cites Taylor, supra, in support. In *Page 10 
that case the state relied on R.C. 4513.02(E) as authority to impound the vehicle. That statute provides: "When any motor vehicle is found to be unsafe * * *, the inspecting officer may order it removed from the highway * * *." The court in Taylor held that because the statute did not expressly authorize impoundment, it did not provide such authorization. The court in Taylor held: "a car may be impounded when impoundment is authorized by statute or municipal ordinance." Id. at 422.
 {¶ 35} The Supreme Court in Opperman, supra, held that inventories of vehicles pursuant to standard police procedures are reasonable. Id. at 376. Ohio courts have held that impoundment may be authorized by a police regulation, order, or policy. In State v. Cook (2001),143 Ohio App.3d 386, the Eighth Appellate District upheld an impoundment under a police order that authorized an impoundment when a driver is operating a vehicle with a suspended license, even though the defendant was arrested while he was out of the vehicle and the car was parked twenty feet away from the location where he was arrested. The court held:
 {¶ 36} "Standardized procedures can also be found in police regulations or municipal ordinances authorizing impoundment. See, e.g.State v. Gordon (1994), 95 Ohio App.3d 334, 338 * * * (vehicle lawfully impounded when city of Cleveland Police Department's written police regulations and established police procedure required that the vehicle be impounded); State v. Robinson, 2000 Ohio App. LEXIS 4920 (Oct. 25, 2000), Summit App. No. 19905, unreported (lawful impoundment made after arrest pursuant to city of Akron Police Department policy) * * *." Id. at 390.
 {¶ 37} The record reveals that Willoughby Hills Police policy, Sec. IV, F6, provides: "Officers may cause the impoundment of a vehicle in other circumstances as *Page 11 
follows: * * * 6. When a vehicle, because of faulty equipment, is determined to be a hazard if operated * * *."
 {¶ 38} Based upon Sec. IV, F6 of the Willoughby Hills Police Department policy, we hold that Sgt. Planisek had the authority to impound appellant's vehicle.
 {¶ 39} We hold that the inventory search of appellant's vehicle was also authorized pursuant to his arrest for obstruction of official business. A vehicle may be impounded if its occupant is arrested.Taylor, supra. It is undisputed that appellant was arrested for obstruction of official business. The offense of obstruction of official business under R.C. 2921.31 prohibits any person, with purpose to obstruct the performance by a public official of any authorized act within his official capacity, to do any act that impedes a public official in the performance of his lawful duties. As a result, based upon the testimony of the officers, we hold that there was competent, credible evidence to support the trial court's finding that appellant obstructed the officers in their efforts to impound his vehicle and thus obstructed official business. We hold the officers were also authorized to impound appellant's vehicle and perform an inventory search pursuant to his arrest for obstruction of official business.
 {¶ 40} Appellant argues that his arrest was unlawful because the officers were not entitled to impound his car so he was justified in refusing to cooperate with them. Because we hold the officers were authorized to impound appellant's vehicle, we hold appellant was not justified in obstructing the performance of their duties. However, assuming arguendo, they did not have this authority, the officers were also authorized to stop and frisk him. Appellant's refusal to exit his vehicle, to turn toward his car and place his hands behind his back, forcing the officers to use physical force to obtain his compliance, obstructed the officers in their duty to frisk him. It must be noted that *Page 12 
appellant admitted at the suppression hearing that the officers had the right to stop him. They therefore had the corollary right to frisk him. Appellant's combative behavior obstructed the officers in frisking appellant. The cases cited by appellant to support his argument that his acts did not constitute obstruction are inapposite. In State v.Lohaus, 1st Dist. No. C-020444, 2003-Ohio-777, the court held that where a Terry stop is justified, it is within the purview of an officer's lawful duties. The court held that where an officer attempts to make aTerry stop, a defendant's refusal to stop, which forces the officer to physically restrain him, constitutes obstructing official business. For this additional reason, the officers were authorized to arrest appellant for obstructing official business.
 {¶ 41} We also hold that the officers were authorized to search appellant's vehicle incident to his arrest irrespective of the inventory search. In New York v. Belton (1981), 453 U.S. 454, the Court held that a police officer can search the passenger compartment of a vehicle and all containers found within that compartment as incident to the custodial arrest of a recent occupant of the automobile. The Ohio Supreme Court adopted the rule of Belton in State v. Murrell (2002),94 Ohio St.3d 489, in holding:
 {¶ 42} "* * * Consistent with Belton, we hold that when a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. * * * Id. at 496.
 {¶ 43} The officers' search of appellant's vehicle incident to his arrest was authorized under Belton and Murrell.
 {¶ 44} Next, appellant argues that because each officer provided a different ground for the search, they did not conduct the search in good faith. He argues that *Page 13 
Parmertor testified the search was incident to arrest, while Planisek testified the search was an inventory search. However, our review of the testimony reveals that both officers testified that the search was conducted on both grounds. Since the evidence in the record supported the search of appellant's vehicle on both grounds, we cannot say the court was incorrect in finding the officers acted in good faith.
 {¶ 45} Finally, appellant argues that because the officers did not complete an inventory list, the search was invalid. This argument was considered and rejected by the Tenth Appellate District inTotten, supra. The court held:
 {¶ 46} "The arresting officers testified that they made a decision to impound appellant's car following his arrest. Accordingly, they proceeded to conduct an inventory search of the vehicle. When they found the cocaine in the Altoid tin, the inventory search ceased and the car was towed to headquarters. * * * At that point, the trial court concluded, probable cause arose and, regardless of what label may be attached to the subsequent search of the automobile, it was valid and no warrant was necessary. Appellant's contention that the inventory search was invalid because it was not conducted in accordance with the Whitehall Police Department's policy becomes moot as long as the initiation of the inventory search was not a pretext. The trial court, based upon the testimony of the arresting officers, found no pretext and we must give deference to that finding. The fact that the inventory procedures were not properly completed is only a factor to consider but not determinative. While it may arguably have been better police procedure to complete the inventory process, it is understandable that the search was immediately halted upon finding what appeared to be a major discovery of crack to obtain the drug sniffing dog to ascertain the correctness of the discovery." Id. at *8-*9. *Page 14 
 {¶ 47} The trial court found the officers' failure to complete an inventory form was the result of an oversight, and did not negate their authority to conduct the search. The court clearly found the officers' testimony was credible, the search was made in good faith, and was not a mere pretext to investigate for evidence. These findings were based on competent, credible evidence and we therefore cannot disturb them on appeal. Based upon the trial court's findings, we hold that the officers had the authority to conduct an inventory search pursuant to the impoundment of the vehicle under police policy and/or appellant's lawful arrest. The failure to complete an inventory sheet due to Planisek's inadvertent miscommunication did not vitiate this authority. We hold the search was also justified pursuant to the Supreme Court's holding inMurrell.
 {¶ 48} For the reasons stated in the Opinion of this court, the assignment of error is not well-taken. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.
DIANE V. GRENDELL, J., concurs,
 COLLEEN MARY OTOOLE, J., concurs in judgment only. *Page 1