[Cite as *Stae v. Allen*, 2018-Ohio-3240.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-A-0069** |
| JASON F. ALLEN, a.k.a. ALLEN, JASON FOSTER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2015 CR 00559.

Judgment: Affirmed

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Michelle M. French*, Law Offices of Michelle M. French, LLC, 28 West Jefferson Street, Jefferson, OH 44047 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Jason F. Allen, a.k.a. Allen, Jason Foster, appeals from the September 1, 2017 judgment of the Ashtabula County Court of Common Pleas, denying his motion to suppress, following a warrantless search of his motel room, based on an anonymous tip. For the reasons that follow, we affirm.

{¶2} December 9, 2015, Mr. Allen was indicted for one count of Illegal Manufacture of Drugs, a felony of the first degree, in violation of R.C. 2925.04(A)(C)(3)(b); one count of aggravated possession of drugs, a felony of the first degree, in violation of R.C. 2925.11(A)(C)(1)(d); one count of illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree, in violation of R.C. 2925.041(A); and one count of tampering with evidence, a felony of the third degree, in violation of R.C. 2921.12(A)(1). December 12, 2016, Mr. Allen was arraigned and entered a plea of not guilty. April 8, 2016, a motion to suppress was filed with leave of the trial court. April 27, 2016, the state filed a motion in opposition. October 19, 2016, a hearing was held on the motion to suppress, as well as the co-defendant, Gabrielle Neuroth's motion to suppress. October 21, 2016, the trial court issued its decision denying the motion.

{¶3} Deputy Jay Thomas of the Ashtabula County Sheriff's Department testified that on September 28, 2015 he was dispatched to the Ho-Hum Motel on North Ridge Road in Saybrook Township, Ashtabula County, Ohio, in response to an anonymous male caller who indicated that there was a strong chemical odor emanating from one of the end rooms at the motel. Deputy Thomas and Sergeant James Truckey each responded to the call driving separate vehicles which they parked next to the motel so as not to be seen by anyone in the motel. While responding to the call Deputy Thomas also received a report of a stolen vehicle from a residence on North Ridge West. When they approached the motel, they observed the reported stolen vehicle parked in front of Room 10, the end room of the motel. When they approached the front door of Room 10

2

they could hear talking inside. Deputy Thomas knocked on the door and a female responded, "hold on honey, we're getting dressed."

{¶4} Deputy Thomas testified that while waiting at the door he did not smell any chemical odor coming from the room. Deputy Thomas did not identify himself, and knocked several more times before the door was finally opened approximately five minutes later. While waiting for the door to open Deputy Thomas walked to the rear of the building to make sure nobody was attempting to get out the back. Deputy Thomas was not present when the door opened, but returned to the front door when he heard Deputy Truckey speaking with someone, and positioned himself behind Deputy Truckey. Deputy Truckey was speaking with Mr. Allen and a female identified as Gabrielle Neuroth. The pair were in their underwear. Deputy Thomas testified that both were fidgeting, and their hands were trembling and speech was fast, like they were nervous, but that it was not uncommon for people to do this when dealing with police.

{¶5} Mr. Allen was advised the deputies were investigating the stolen vehicle report. Deputy Thomas testified Mr. Allen seemed relieved when told this, and retreated into the motel room to retrieve a hand-written document alleging to evince the sale of the vehicle to appellant. Deputy Thomas then entered the motel room continuing the investigation of the stolen vehicle. Deputy Thomas testified that they were invited into the room to discuss the stolen vehicle.

{¶6} Ms. Neuroth testified that as soon as appellant opened the door, Sergeant Truckey put his foot in the door so that it could not be closed and just walked in without asking for permission.

3

{¶7}   Once inside, Deputy Thomas testified he asked for permission to check for other people in the room and was told to go ahead. While doing so, Deputy Thomas noticed the faint smell of ammonia in the air which caused him to suspect that there was a methamphetamine lab in the room. Deputy Thomas testified he could not tell if there was a lab previously or currently in the room. He did not notice the odor until he was in the room. Deputy Thomas testified he then asked for, and received, permission to search various places in the room. Ms. Neuroth testified that she was never asked permission to search her belongings, and that she did not hear the deputies ask Mr. Allen for permission. Deputy Thomas found a pair of nitrile gloves, which are commonly used in the manufacture of methamphetamine, and eventually found the methamphetamine lab hidden in the box spring. Both Mr. Allen and Ms. Neuroth were then placed under arrest.

{¶8}   In denying the motion to suppress, the trial court found the testimony of Deputy Thomas to be credible and reliable and that Mr. Allen had invited the deputy into the motel room. Further, the trial court found that Mr. Allen's actions implied the deputy had consent to enter the room. The trial court also found the deputy asked for consent each time he searched an item in the motel room, and that Mr. Allen gave him permission. The trial court did not find Ms. Neuroth's testimony to be credible or reliable. The trial court further stated it had the opportunity to view each witness upon the stand, their manner of testifying, their physical demeanor, including facial expressions and eye contact with the lawyers and the trial court. The trial court found, based on this opportunity, the testimony of Deputy Thomas to be truthful.

4

{¶9} November 13, 2017 Mr. Allen entered a no contest plea, preserving his right to appeal, to an amended count two of the indictment, attempted aggravated possession of drugs, a felony of the second degree; count three of the indictment, illegal assembly or possession of chemicals for the manufacture of drugs; and count four, tampering with evidence.

{¶10} Mr. Allen timely noticed this appeal, asserting the following for his sole assignment of error:

{¶11} "THE TRIAL COURT ERRED BY DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE IN VIOLATION OF HIS DUE PROCESS RIGHTS AND HIS RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 14 OF THE OHIO CONSTITUTION."

{¶12} The sole argument raised on appeal is that because all evidence obtained by the state resulted from the warrantless search, all of the evidence should have been suppressed. Because there was competent, credible evidence for the trial court's finding that the deputy entered appellant's motel room with his consent, we do not agree.

{¶13} On review of a trial court's ruling on a motion to suppress, an appellate court determines whether the trial court's findings are supported by some competent, credible evidence. An appellate court may not disturb a trial court's decision on a motion to suppress where some competent, credible evidence supports its decision. *State v. Retherford*, 93 Ohio App.3d 586, 592 (1994). In determining a motion to

5

suppress, the trial court serves as the trier of fact and determines the credibility of the witnesses and the weight of the evidence. An appellate court is required to accept the trial court's factual findings as true, and determine, without deference to the trial court, whether the trial court met the appropriate legal standard. *State v. Jackson*, 11th Dist. Ashtabula No. 2003-A-2005, 2004-Ohio-2920, ¶12.

{¶14} The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution require police to obtain a search warrant based on probable cause prior to conducting a search, unless the search falls within an exception to this requirement. *Katz v. United States*, 389 U.S. 347 (1967); see also *State v. Totten,* 10th Dist. Franklin No. 00AP-535, 2001 WL 125153, *2 (Feb. 15, 2001). In this case, Deputy Thomas testified Mr. Allen gave his consent to the search, and the trial court specifically found he invited the officers into the motel room, and that his actions implied that the deputies had consent to enter.

{¶15} Mr. Allen argues, contrary to the specific findings of the trial court, that he never consented to the Deputy's entry into the motel room. We find this argument is not well taken.

{¶16} Appellate review of the voluntariness of consent to search is "'limited to a determination of whether the trial court's decision was "clearly erroneous," and an appellate court must 'accept the trial court's findings of fact and determinations regarding credibility if they are supported by competent, credible evidence.' *State v. Samples*, 11th Dist. Geauga No. 93-G-1787, 1994 WL 315710, quoting *State v. Hickson*, 69 Ohio App.3d 278, 280 (8th Dist.1990).

6

{¶17} In *Bainbridge v. Kasada*, 11th Dist. Geauga No. 2007-G-2797, 2008-Ohio-2136, ¶28-36, this court stated:

{¶18} "An established exception to the rule that entry of a home requires a warrant or exigent circumstances is where the entry is pursuant to a voluntary consent. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, * * *. Police do not need a warrant, probable cause, or even a reasonable, articulable suspicion to conduct a search when a suspect voluntarily consents to the search. *Id.* A search conducted pursuant to a valid consent is constitutionally permissible. *Id.* Moreover, a voluntary consent need not amount to a waiver. Consent can be voluntary without being an 'intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, * * *. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. *State v. McConnell,* 5th Dist. No.2002CA00048, 2002-Ohio-5300, at ¶8. The state has the burden to prove consent was freely and voluntarily given by clear and convincing evidence. *State v. Robinette,* 80 Ohio St.3d 234, 243, * * *. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Florida v. Jimeno* (1991), 500 U.S. 248, 251, * * *.

{¶19} "The First Appellate District addressed the issue of what constitutes consent for police to enter a home in *State v. Robinson* (1995), 103 Ohio App.3d 490, * * *, appeal not allowed, (1995), 74 Ohio St.3d 1418, * * *, reconsideration denied, (1995), 74 Ohio St.3d 1465, * * *. In that case two police officers knocked on the

7

defendant's door. When he opened the door, the officers smelled marijuana coming from inside. As soon as the defendant realized they were police officers, he tried to close the door, but the officers forced their way inside and found marijuana, which formed the basis for the drug abuse charge subsequently brought against the defendant. The trial court granted the defendant's motion to suppress and the state appealed. The appellate court affirmed, holding:

{¶20} "'Robinson consented to the officers' initial breach of the threshold of his apartment. When Robinson opened the door following Officer Sneed's identification of herself by name only, he did so freely and voluntarily, under neither duress nor coercion, *see Schneckloth,* (supra), and not upon an express misrepresentation by the officers. *See State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141 (* * *). The act of opening the door was not rendered involuntary, and thus nonconsensual, by the fact that Robinson would not have opened the door but for Officer Sneed's failure to identify herself as a police officer. *See State v. Posey* (1988), 40 Ohio St.3d 420 (* * *), paragraph three of the syllabus. Therefore, the officers did not violate the Fourth Amendment in attaining their initial vantage point.'

{¶21} "'The officers' progress into the apartment was not, however, made in conformity with the Fourth Amendment consent doctrine. Robinson communicated to the officers the limited scope of his consent to the initial intrusion when he attempted to bar the officers' entry into the apartment by closing the door, and the officers exceeded the scope of Robinson's voluntary consent when they forced their way over the threshold and into the apartment. (* * *)' *Id.* at 495, * * *.

{¶22} "The holding in *Robinson, supra*, has been followed by numerous other Ohio appellate districts. In *State v. Damron,* 5th Dist. No. 06CA-150, 2007-Ohio-5808, the Fifth Appellate District held:

{¶23} "'Whether a search is authorized by warrant or by consent, the scope of the search is limited by the terms of its authorization. (* * *) Where a suspect voluntarily opens his door to the police but then closes the door, barring the officers' progress into his apartment, he has communicated the withdrawal of his consent to the initial intrusion.' *Id.* at ¶22, citing *Robinson, supra*.

{¶24} The Ninth Appellate District also followed the holding in *Robinson, supra*, in *State v. Cooper,* 9th Dist. No. 21494, 2003-Ohio-5161. In that case the court held:

{¶25} "'(* * *) A person can demonstrate consent to enter either expressly or impliedly. *State v. Schroeder* (Oct. 26, 2001), 6th Dist. No. WD-00-076, * * *, 2001 WL 1308002; *State v. Asworth* (Apr. 11, 1991), 10th Dist. No. 90 AP-916, * * *, 1991 WL 54181. Courts have found such actions as *opening a door and stepping back,* or leading an officer through an open door without expressing an intent that he should not follow constitute implied consent. *Schroeder, supra* (;) *Asworth, supra*. Further, voluntarily opening a door constitutes voluntary consent to step into the threshold of an apartment. *State v. Robinson* (supra). Additionally, "there is a recognized difference between consent granted to the police to enter (an apartment) to conduct an interview and consent granted to conduct a search." *Schroeder, supra*, citing *Lakewood v. Smith* (1965), 1 Ohio St.2d 128, * * *, (* * *), paragraph one of the syllabus." *Id.* at ¶ 9, 205 N.E.2d 388. (Emphasis added.)

9

{¶26} "* * * The Supreme Court of Ohio held in [*Lakewood*, *supra*]: 'A person who admits a police officer to his premises in compliance with the officer's request for an interview does not thereby (* * *) consent to a search of the premises.' *Id.* at paragraph one of the syllabus. This court cited *Lakewood,* supra, in *State v. Townsend* (Aug. 27, 1999), 11th Dist. No. 98-L-036, * * *, 1999 WL 689934, in holding: '(W)hen a homeowner merely permits police to enter his residence, there is no consent given for them to search the premises. *Id.* at *10." (Parallel citations omitted.) (Emphasis sic.)

{¶27} Here, we cannot say that the trial court erred in finding Mr. Allen had voluntarily consented to the deputies entering the motel room to investigate further the matter of the stolen vehicle. Mr. Allen saw that they were sheriff's deputies when he opened the motel room door. Deputy Thomas testified that when appellant was asked about the stolen truck he appeared relieved and went into the room to retrieve piece of paper purporting to evince the sale of the truck. The deputy testified Mr. Allen never objected to his presence in the motel room. Conversely, Ms. Neuroth testified that neither she nor Mr. Allen consented to the deputy entering the motel room. She testified that as soon as Mr. Allen opened the door, Deputy Truckey, "put his foot in the door and proceeded to come in, follow the door open as it opened, he proceeded to follow it in." The trial court found testimony of Deputy Thomas to be truthful, and the testimony of Ms. Neuroth to be self-serving and unbelievable, and as such, found the deputy's entry to be consensual. The trial court further found the deputy's testimony that Mr. Allen consented to the deputy inspecting the room credible.

{¶28} Based on the trial court's factual finding, competent, credible evidence supports its conclusion the warrantless search was consensual.

{¶29} The assignment of error lacks merit.

{¶30} The judgment of the Ashtabula County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.

concur.