OPINION
{¶ 1} Appellant, Noreen T. Kaseda, appeals her conviction, following a no contest plea, in the Chardon Municipal Court, on one count of operating a motor vehicle under the influence of alcohol. At issue is whether the trial court erred in denying in part appellant's motions to suppress statements and other evidence against her as having been obtained in violation of her constitutional rights. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} On January 16, 2007, a citation was filed against appellant in the Chardon Municipal Court, charging her with operating a motor vehicle under the influence of alcohol, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a), operating a motor vehicle with a prohibited blood alcohol level, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(b), and failure to stop after an accident, a misdemeanor of the first degree, in violation of R.C. 4549.03. On January 17, 2007, appellee entered a plea of not guilty at her arraignment. On March 2, 2007, appellant filed: (1) a "motion to suppress oral and written statements and evidence;" (2) a "motion to suppress arrest and all evidence that is fruit from the poisonous tree following from [sic] an illegal entry of the home;" and (3) a "motion to suppress and/or in limine" regarding: (a) field sobriety test results, (b) breathalyzer test results, (c) appellant's statements, and (d) police officers' observations regarding appellant's sobriety and the validity of field sobriety tests. On April 10, 2007, the trial court conducted a hearing on appellant's motions to suppress. The state filed its response to appellant's motions on May 25, 2007, after the suppression hearing was concluded.
 {¶ 3} Bainbridge Township Police Officer Frank Chickos testified that on Saturday, January 13, 2007, at 12:53 a.m., he was dispatched to respond to a traffic crash at the Greenville Inn on Pine Street in Bainbridge Township near the border of Chagrin Falls Village. Upon arriving at the scene, Officer Chickos conferred with Chagrin Falls Police Officer Jason Weiskopf and two patrons of the bar whose vehicles had been damaged that evening by a hit-skip driver, one in the parking lot of the Greenville and the other on Pine Street. *Page 3 
 {¶ 4} While the officers were on the scene, witnesses stated that appellant, a regular at the Greenville, may have been the driver of the vehicle that had crashed into these two vehicles. Officer Chickos called in appellant's name to his dispatcher in order to obtain her address. He was advised by dispatch of appellant's residence, which was down the street from the Greenville Inn.
 {¶ 5} The officers drove to appellant's residence and arrived at 1:15 a.m. Officer Chickos knocked on the front door. At that time he and Officer Weiskopf heard a male and female arguing inside. Appellant's husband Mario Kaseda came to the front door and opened it. Officer Chickos asked him if appellant was at the house because they needed to talk to her. At that time appellant came out of the bedroom into the living room and identified herself to the officers. Officer Chickos told appellant he needed to talk to her about what happened at the Greenville Inn, and appellant's husband "stepped aside" to permit the two officers to enter the residence to question appellant. The officers then stepped into the entryway.
 {¶ 6} Officer Chickos testified appellant was wearing a tank top and underwear. Her eyes were bloodshot and glassy. Her speech was slow and slurred. The officer asked about the argument they heard. Appellant said she and her husband were arguing about the crash. She said her husband was upset with her for crashing the vehicle.
 {¶ 7} Officer Chickos asked appellant what had occurred at the Greenville. She said, "Yes, I know. I screwed up. I hit a couple, I hit a car in the parking lot." He then asked her why she left without stopping. She said, "I was afraid and then panicked and drove home." She said she had been driving at the time, and she realized she had *Page 4 
struck a car. Officer Chickos testified he could smell alcohol on the breath of both appellant and her husband. The officer asked appellant if she had been drinking and she said she had. He asked her when the crash had occurred, and she said it was 25 minutes prior to their arrival. She said she had not consumed any alcohol since the crash.
 {¶ 8} Officer Chickos then told appellant she would need to go to the Bainbridge Township police station with him to talk further, and he asked her to get dressed. He said they would need to check her bedroom before she dressed to make sure there were no weapons within her reach. They checked her bedroom and left, and then appellant entered the bedroom to dress. The officers waited for appellant in the living room. While they were waiting, Bainbridge Township Police Officer Chris Smith arrived to provide assistance.
 {¶ 9} Appellant came into the living room when she was done dressing, and Officer Chickos told her she was under arrest for leaving the scene of a traffic crash. He then handcuffed her, searched her for weapons, and advised her of her Miranda rights. Officer Chickos put appellant in his cruiser and transported her to the police station. Before leaving, Officer Chickos asked Officer Smith to photograph appellant's vehicle which was parked in the garage.
 {¶ 10} Officer Smith testified he told appellant's husband that he needed to photograph their vehicle as part of the ongoing investigation of the accident. The garage door was down at that time. Officer Smith testified that at first, Mr. Kaseda was hesitant. The officer told him the vehicle could either be towed and impounded at his cost, or they could photograph it with the vehicle in the garage. In response, appellant *Page 5 
said, "okay, go ahead and do it." The garage door was then opened, and Officer Smith took photographs of the vehicle in the garage. The officer testified there was damage to the front left quarter panel.
 {¶ 11} After appellant was booked, Officer Chickos conducted three field sobriety tests, and, based on the results of these tests, he determined appellant was impaired. He then read appellant herMiranda rights and she signed a written form acknowledging she understood and was waiving those rights.
 {¶ 12} Appellant then agreed to take the breathalyzer test. It was administered by Officer Smith at 2:20 a.m., who had returned to the station after photographing appellant's vehicle. The breathalyzer indicated appellant had a blood alcohol concentration of .192.
 {¶ 13} Officer Smith then interviewed appellant at 2:40 a.m. She said she had been driving; that she had crashed into a car; and then panicked and left at 12:30 a.m.
 {¶ 14} Mario Kaseda testified on behalf of his wife, and provided a different version of events. He said when the officers knocked at the front door, he looked out the window and saw the two police officers. He said when he opened the door, the police never asked to talk to his wife and just walked in. He said his wife was in bed at that time and came out of the bedroom wearing her pajamas. He said that after Officer Chickos asked his wife to get dressed, she went into the bedroom and closed the door. He said the officer then opened the bedroom door and came in while she was dressing, and would not let him talk to his wife. On cross-examination Mr. Kaseda testified he and appellant had left the Greenville at 12:30 a.m. He said that his wife had a few drinks that night, and that she was driving their 2006 Cadillac. He said they had parked *Page 6 
in the parking lot of the Greenville, and, when asked if his wife hit a car when they left, he testified, "Not that I can recall." He testified that while the officers were at his house, they did not search for or take any of their property.
 {¶ 15} Following the hearing, on June 27, 2007, the trial court entered its decision, which included findings of fact and conclusions of law. The court found the officers' entry into appellant's residence was consensual, but that their entry into the garage was not. As a result, the trial court suppressed all photographs taken of the vehicle in appellant's garage and all observations by police resulting from their entry into the garage.
 {¶ 16} The trial court found the field sobriety tests were performed in substantial compliance with National Highway Transportation Safety Act standards, and that appellant was properly advised of and waived herMiranda rights. Finally, the court found that the statutory requirements of the breathalyzer test were met and that the test results were admissible. Thus, other than the evidence obtained by entry into appellant's garage, the trial court denied appellant's motions to suppress.
 {¶ 17} Thereafter, on August 14, 2007, appellant pled no contest to OVI, in violation of R.C. 4511.19(A)(1)(a), and the remaining counts were dismissed. She was found guilty and sentenced by the trial court to 180 days in jail, 177 of which were suspended, and fined $500. On that same date, on appellant's motion, the trial court stayed the execution of appellant's sentence pending appeal. In addition, on September 27, 2007, the trial court entered an order that the Bureau of Motor Vehicles not reflect appellant's conviction until such time as a decision is rendered by this court, and stayed appellant's conviction until further order. Appellant appeals the trial court's *Page 7 
denial in part of her motions to suppress, asserting the following for her sole assignment of error:
 {¶ 18} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTIONS TO SUPPRESS BASED UPON THE WARRANTLESS ENTRY BY POLICE INTO THE HOME OF APPELLANT AT 1:20 A.M."
 {¶ 19} The sole argument asserted by appellant on appeal is that because all evidence obtained by the state, including appellant's statements and the results of the field sobriety tests and the breathalyzer test, resulted from the officers' warrantless entry into appellant's home, all of the state's evidence should have been suppressed. Because there was competent, credible evidence for the trial court's finding that the officers entered appellant's home with her husband's voluntary consent, we do not agree.
 {¶ 20} On review of a trial court's ruling on a motion to suppress, an appellate court determines whether the trial court's findings are supported by some competent, credible evidence. An appellate court may not disturb a trial court's decision on a motion to suppress where some competent, credible evidence supports its decision. State v.Retherford (1994), 93 Ohio App.3d 586, 592. In determining a motion to suppress, the trial court serves as the trier of fact and determines the credibility of the witnesses and weight of the evidence. The appellate court is required to accept the trial court's factual findings as true, and determine, without deference to the trial court, whether the court met the appropriate legal standard. State v. Jackson, 11th Dist. No. 2003-A-2005, 2004-Ohio-2920, at ¶ 12. *Page 8 
 {¶ 21} Appellant raises three issues under her assignment of error. The first issue asserted is whether the Fourth Amendment applies to conversations. Appellant argues the officers' conversations with her implicated the Fourth Amendment. Appellant cites Berger v. New York
(1967), 388 U.S. 41 in support. In that case the Supreme Court held that The Fourth Amendment's protections include "conversation," and the use of electronic devices to capture it was a "search" within the meaning of that Amendment." Id. at s51 . . . We note there was no electronic or any surreptitious device or method used by the police officers to secretly intercept appellant's conversations. Officer Chickos merely went to appellant's residence, and, when allowed to enter the residence by her husband, asked her questions, which she willingly answered.
 {¶ 22} While we agree that conversations are subject to theFourth Amendment's protections, it is the circumstances in which they are obtained by law enforcement officers that determine whether they have been obtained lawfully or in violation of a defendant's constitutional rights.
 {¶ 23} Next, appellant argues that because the police made a warrantless entry and search of her home, the statements she made and the results of the field sobriety tests and breathalyzer test were inadmissible. We agree with appellant's argument that "a presumption of unreasonableness * * * attaches to all warrantless home entries."
 {¶ 24} The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution require police to obtain a search warrant based on probable cause prior to conducting a search unless the search falls within an exception to this requirement.Katz v. United States (1967), 389 U.S. 347; see, also, State v.Totten (Feb. 15, 2001), 10th Dist. No. 00AP-535, 2001 Ohio App. LEXIS 524, *5-*6. *Page 9 
 {¶ 25} Appellant's reliance on Payton v. New York (1980), 445 U.S. 573
and Welsh v. Wisconsin (1984), 466 U.S. 740 in support of her argument that the officers' entry into her home was unreasonable is misplaced because in both cases, the police entered the defendant's home to arrest him without a warrant and without consent. Here, Officer Chickos testified that while he suspected that appellant was the hit-skip driver because her name had come up at the scene, he was still in the process of investigating the crash when he went to her home. His purpose was to question, not to arrest, appellant. Further, as discussed infra, prior to entering appellant's home, the officers had secured her husband's voluntary consent. Thus, because the officers did not go to appellant's residence to arrest her or to search her home and further because they obtained her husband's consent before entering, appellant's argument that Officer Chickos needed a search warrant is not well taken
 {¶ 26} Finally, as appellant's third issue, she argues that neither she nor her husband consented to the officers' entry into their residence. We do not agree.
 {¶ 27} Appellate review of the voluntariness of consent to search is "limited to a determination of whether the trial court's decision was `clearly erroneous,'" and an appellate court must "accept the trial court's findings of facts and determinations regarding credibility if they are supported by competent, credible evidence." State v.Samples (June 24, 1994), 11th Dist. No. 93-G-1787, 1994 Ohio App. LEXIS 2752, *6.
 {¶ 28} An established exception to the rule that entry of a home requires a warrant or exigent circumstances is where the entry is pursuant to a voluntary consent. Schneckloth v. Bustamonte (1973),412 U.S. 218, 219. Police do not need a warrant, probable cause, or even a reasonable, articulable suspicion to conduct a search when a *Page 10 
suspect voluntarily consents to the search. Id. A search conducted pursuant to a valid consent is constitutionally permissible. Id. Moreover, a voluntary consent need not amount to a waiver. Consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst (1938), 304 U.S. 458,464. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. State v.McConnell, 5th Dist. No. 2002CA00048, 2002-Ohio-5300, at ¶ 8. The state has the burden to prove consent was freely and voluntarily given by clear and convincing evidence. State v. Robinette, 80 Ohio St.3d 234,243, 1997-Ohio-343. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect? Florida v. Jimeno (1991),500 U.S. 248, 251.
 {¶ 29} The First Appellate District addressed the issue of what constitutes consent for police to enter a home in State v. Robinson
(1995), 103 Ohio App.3d 490, appeal not allowed, (1995),74 Ohio St.3d 1418, reconsideration denied, (1995), 74 Ohio St.3d 1465. In that case two police officers knocked on the defendant's door. When he opened the door, the officers smelled marijuana coming from inside. As soon as the defendant realized they were police officers, he tried to close the door, but the officers forced their way inside and found marijuana, which formed the basis for the drug abuse charge subsequently brought against the defendant. The trial court granted the defendant's motion to suppress and the state appealed. The appellate court affirmed, holding: *Page 11 
 {¶ 30} "Robinson consented to the officers' initial breach of the threshold of his apartment. When Robinson opened the door following Officer Sneed's identification of herself by name only, he did so freely and voluntarily, under neither duress nor coercion, seeSchneckloth, [supra], and not upon an express misrepresentation by the officers. See State v. Pi Kappa Alpha Fraternity (1986),23 Ohio St.3d 141 * * *. The act of opening the door was not rendered involuntary, and thus nonconsensual, by the fact that Robinson would not have opened the door but for Officer Sneed's failure to identify herself as a police officer. See State v. Posey (1988), 40 Ohio St.3d 420 * * *, paragraph three of the syllabus. Therefore, the officers did not violate theFourth Amendment in attaining their initial vantage point.
 {¶ 31} "The officers' progress into the apartment was not, however, made in conformity with the Fourth Amendment consent doctrine. Robinson communicated to the officers the limited scope of his consent to the initial intrusion when he attempted to bar the officers' entry into the apartment by closing the door, and the officers exceeded the scope of Robinson's voluntary consent when they forced their way over the threshold and into the apartment. * * *" Id. at 495.
 {¶ 32} The holding in Robinson, supra, has been followed by numerous other Ohio appellate districts. In State v. Damron, 5th Dist. No. 06CA-150, 2007-Ohio-5808, the Fifth Appellate District held:
 {¶ 33} "Whether a search is authorized by warrant or by consent, the scope of the search is limited by the terms of its authorization. * * * Where a suspect voluntarily opens his door to the police but then closes the door, barring the officers' progress into *Page 12 
his apartment, he has communicated the withdrawal of his consent to the initial intrusion." Id. at ¶ 22, citing Robinson, supra.
 {¶ 34} The Ninth Appellate District also followed the holding inRobinson, supra, in State v. Cooper, 9th Dist. No. 21494, 2003-Ohio-5161. In that case the court held:
 {¶ 35} "* * * A person can demonstrate consent to enter either expressly or impliedly. State v. Schroeder (Oct. 26, 2001), 6th Dist. No. WD-00-076, 2001 Ohio App. LEXIS 4786; State v. Asworth (Apr. 11, 1991), 10th Dist. No. 90 AP-916, 1991 Ohio App. LEXIS 1623. Courts have found such actions as opening a door and stepping back, or leading an officer through an open door without expressing an intent that he should not follow constitute implied consent. Schroeder, supra[;] Asworth, supra. Further, voluntarily opening a door constitutes voluntary consent to step into the threshold of an apartment. State v. Robinson[, supra]. Additionally, `there is a recognized difference between consent granted to the police to enter [an apartment] to conduct an interview and consent granted to conduct a search.' Schroeder, supra, citingLakewood v. Smith (1965), 1 Ohio St.2d 128, * * *, paragraph one of the syllabus." Id. at ¶ 9. (Emphasis added.)
 {¶ 36} Appellant's reliance on Lakewood, supra, is therefore misplaced. The Supreme Court of Ohio held in that case: "A person who admits a police officer to his premises in compliance with the officer's request for an interview does not thereby * * * consent to a search of the premises." Id. at paragraph one of the syllabus. This court citedLakewood, supra, in State v. Townsend (Aug. 27, 1999), 11th Dist. No. 98-L-036, 1999 Ohio App. LEXIS 3986, in holding: "[W]hen a homeowner merely permits police to *Page 13 
enter his residence, there is no consent given for them to search the premises. Id. at *10.
 {¶ 37} While appellant does not challenge the authority of her husband to give consent, and thus waived the issue on appeal, see State v.Awan (1986), 22 Ohio St.3d 120, syllabus, we note a spouse is presumed to have authority to consent to a search of all areas of the residence.United States v. Duran (C.A. 7, 1992), 957 F.2d 499, 505. Further, the Ohio Supreme Court in State v. McCarthy (1971), 26 Ohio St.2d 87, held: "[A] wife's voluntary consent to a search of her and her husband's mutual residence is sufficient to constitutionally permit an otherwise reasonable search of the common areas thereof, even though the search may produce incriminating evidence against the husband." Id. at 93.
 {¶ 38} Here, we cannot say the trial court erred in finding that Mr. Kaseda had voluntarily consented to the entry of appellant's home by the two officers for the purpose of questioning appellant. Mr. Kaseda testified that after the officers knocked at the door, he looked out the window and saw them, so he knew police officers were at the door when he opened it. Officer Chickos testified that Mr. Kaseda opened the door for the officers, and, after they stated their purpose for being there, he stepped aside to allow the officers to enter the residence to question his wife. Neither Mr. Kaseda nor appellant ever objected to the officers' presence in their home at any time during this questioning. On the other hand, Mr. Kaseda testified the officers "didn't even ask" to enter the residence, and that "they just walked in." In finding the officers' entry to be consensual, the trial court obviously found Officer Chickos' testimony to be credible and found Mr. Kaseda's testimony not believable. It is the province of the trial court to *Page 14 
determine the credibility of the witnesses, see Jackson, supra, and we cannot say the trial court's finding was against the weight of the evidence.
 {¶ 39} Appellant argues that her husband was not required to object to the officers' request because "the police * * * didn't give notice of their intentions." We do not agree. Officer Chickos gave appellant's husband the reason for their call: he said they needed to question appellant.
 {¶ 40} Contrary to appellant's argument, this case does not involve a mere "submission to authority." The trial court did not find, as appellant argues, that "Mr. Kaseda consented through his passive non-resistance." Unlike the case cited by appellant, United States v.Worley (6 C.A., 1999), 193 F.3d 380, this is not a case where the defendant stated, "You've got the badge, I guess you can." Rather, after Officer Chickos informed Mr. Kaseda that they needed to question his wife, Mr. Kaseda stepped aside to allow the officers into the residence to question her.
 {¶ 41} Finally, we note appellant does not assign as error the admissibility of her statements under Miranda, and thus waived any claimed Miranda violation on appeal. Awan, supra. However, we observe appellant's Miranda rights were not violated. Beckwith v.United States (1976), 425 U.S. 341, (holding that incriminating statements made to government agents during an interview in a private home were not subject to suppression for lack of Miranda warnings.) Here, when Officer Chickos questioned appellant, she was in the living room of her home and her husband was present. She had not been told she would be arrested, nor was she handcuffed or told she could not leave. Based on Officer Chickos' testimony, appellant was free to leave the room, decline to respond to any questions, or to ask the officers to leave. Instead, she readily *Page 15 
responded to the officer's questions. Further, Officer Chickos testified that, prior to further questioning at the police station, he had advised appellant of her Miranda rights after arresting her at her home. In addition, at the station, Officer Chickos read to appellant herMiranda rights from a written form, and, after doing so, appellant signed the form, indicating she understood her rights and was waiving them, before Officer Smith further questioned her.
 {¶ 42} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Chardon Municipal Court finding the officers' entry into appellant's residence was consensual is supported by some competent, credible evidence and is therefore affirmed.
 DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur. *Page 1