[Cite as *Westlake v. Dudas*, 2020-Ohio-31.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF WESTLAKE,  :

    Plaintiff-Appellee,  :

                                    No. 108310

    v.  :

BRITTANY M. DUDAS,  :

    Defendant-Appellant.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** January 9, 2020

---

Criminal Appeal from the Rocky River Municipal Court
Case No. 18 CRB 1264

---

### *Appearances:*

Michael P. Maloney, Law Director, and John J. Spellacy,
Assistant Law Director, *for appellee.*

James V. Barilla, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Brittany M. Dudas ("Dudas") appeals the trial court's decision to adopt the magistrate's findings of fact and conclusions of law. Dudas asks this court to reverse the judgment of the trial court and dismiss the

complaint against Dudas. We affirm the trial court's decision but remand for the limited purpose of correcting the journal entry.

{¶ 2} After the denial of Dudas's motion to suppress, Dudas pled no contest to one count of offenses involving underage persons, a first-degree misdemeanor in violation of R.C. 4301.069(C)(1); one count of possession of drugs, a first-degree misdemeanor in violation of R.C. 2925.11(C)(3); and one count of possession of drug paraphernalia, a minor misdemeanor in violation of R.C. 2925.141(C). The trial court sentenced Dudas to pay a $300 fine, 180 days suspended jail time, and six months of community control supervision.

## I.  Facts and Procedural History

{¶ 3} On June 8, 2018, a Westlake police officer conducted a traffic stop of a 17-year-old male, W.C. During the traffic stop, the officer learned that W.C. had just dropped off Dudas and another minor female, L.P., at the nearby Red Roof Inn Hotel. Two more Westlake police officers arrived at the traffic stop as backup. According to Westlake police, the Red Roof Inn is a location known for prostitution, human and drug trafficking. W.C. told the officers that Dudas was over 18 years old, but L.P. was not. W.C. also told the officers that the alcohol found in his vehicle was left by either Dudas or L.P.

{¶ 4} After receiving the information from W.C. and the fact that there was a minor involved, the officers went to the Red Roof Inn to speak with staff. The staff confirmed that Dudas rented room 227 and gave the officers Dudas's license plate registration information.  After running Dudas's information through the Law

Enforcement Automated Data System ("LEADS"), it was confirmed that Dudas was 20 years old. No such information was available for L.P.

{¶ 5} The police officers then went to room 227 and pounded on the door for a couple of minutes. The officers announced themselves as "Westlake Police," and told the occupants that they needed to open the door so they could conduct a juvenile welfare check. Dudas opened the door, and then went to lie down in the bed. The officers entered the room and removed the covers from over Dudas's head. The officers stated that they removed the covers for officer safety. One of the officers observed the bathroom door moving from side to side. He advised whomever was in the bathroom to come out, and he tried to open the bathroom door, but was unsuccessful. The officer then advised the person to exit the bathroom, and L.P. exited the bathroom with bloodshot and glassy eyes. The officer smelled an odor of alcohol on L.P. and observed an open bottle of vodka in the bathtub. The officer questioned L.P. regarding the consumption of alcohol. L.P. admitted consuming alcohol and stated that she stole the bottle of vodka from a grocery store.

{¶ 6} The officers also observed bottles of alcohol near the door, sticking out of Dudas's purse. Dudas admitted to the officers that the alcohol belonged to her and consented to having her purse searched after she was placed under arrest and mirandized. The officers found marijuana, marijuana blunts, and a marijuana grinder in Dudas's purse.

{¶ 7} Dudas was charged with offenses involving underage persons, possession of drugs, and possession of drug paraphernalia. Dudas pled not guilty,

and then filed a motion to suppress the evidence arguing that the officers conducted an unlawful, warrantless search and seizure of her hotel room. The magistrate concluded that the police officers did not violate Dudas's Fourth Amendment rights and denied the motion to suppress. Dudas filed an objection to the magistrate's decision in the trial court. The trial court, in its journal entry stated, in part, "upon review of the recorded proceedings hereby finds that the Magistrate's determination of the factual issues were indeed proper and that the application of the appropriate law was applied. The objections of the Defendant are hereby overruled." (Journal Entry 18 CRB 1264, Feb. 12, 2019.)

{¶ 8} Dudas then pleaded no contest to all the charges. The trial court sentenced Dudas to probation, a suspended jail sentence, court costs, and fines. The trial court stayed the sentence on condition that Dudas post an appellate bond within 30 days. Dudas timely posted the bond and filed this appeal arguing one assignment of error for our review:

I. The trial court erred in not sustaining the objection to the magistrate's decision and by adopting the findings of fact and conclusions of law of the magistrate, which violates the Fourth Amendment of the United States Constitution which grants to the people the right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

## II. Motion to Suppress

### A. Standard of Review

{¶ 9} Accordingly,

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. Mathis*, 8th Dist. Cuyahoga No. 107986, 2019-Ohio-4887, ¶ 35, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

**B.    Whether the Trial Court Erred in Adopting the Magistrate's Decision that the Appellant's Fourth Amendment Rights were Not Violated**

{¶ 10} In Dudas's brief, she acknowledges that the protective sweep of the hotel, the plain view of the contraband, and Dudas's consent to search her purse were all lawful. However, Dudas's only argument is that the police unlawfully entered her hotel room without a warrant, violating her Fourth Amendment rights, thereby making the protective sweep and seizure of the contraband fruit of the poisonous tree.

Evidence is generally deemed inadmissible when law enforcement obtains the evidence in violation of the Fourth Amendment's prohibition against warrantless searches. *State v. Posey*, 40 Ohio St.3d 420, 426, 534 N.E.2d 61 (1988), citing *Segura v. United States*, 468 U.S. 796, 804, 82 L.Ed.2d 599, 104 S.Ct. 3380 (1984). *See also*, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, (1963). Moreover, the "fruit of the poisonous tree" doctrine, fashioned in *Wong Sun*, prevents evidence obtained as a result of a warrantless search from supporting probable cause in a subsequent search and seizure warrant. *Id.*

*State v. Mickey*, 8th Dist. Cuyahoga No. 82844, 2003-Ohio-6878, ¶ 12.

**{¶ 11}** Additionally,

[t]he Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Ohio Constitution, Article I, Section 14, is nearly identical to its federal counterpart. *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998).

For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. *See Katz v. United States*, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Warrantless searches and seizures are considered per se unreasonable, unless an exception to the warrant requirement applies. *Id.* at 357.

One exception to the warrant requirement is voluntary consent. *State v. Riedel*, 2017-Ohio-8865, 100 N.E.3d 1155, ¶ 32 (8th Dist.), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The state bears the burden of proving voluntary consent, and it must prove by "clear and positive" evidence that the consent was "freely and voluntarily" given and was not contaminated by any duress or coercion. *Id.*; *State v. Rodriguez*, 8th Dist. Cuyahoga No. 98422, 2013-Ohio-491, ¶ 21.

The question of whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 227. The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness; i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

Important factors in determining whether a consent was voluntary are: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*State v. Washington*, 8th Dist. Cuyahoga No. 86370, 2006-Ohio-568, ¶ 20.

> Further, "[k]nowledge of the right to refuse is not a prerequisite to voluntary consent, but consent must not have been coerced by threats or force or by a claim of lawful authority." *State v. Moncrease*, 8th Dist. Cuyahoga Nos. 76145, 76146, and 76147, 2000 Ohio App. LEXIS 1650, 99 (Apr. 13, 2000), citing *Schneckloth*. "The voluntariness of consent is vitiated by police statements that lead the person to believe that refusing consent will be fruitless." *Id.* at 9-10, citing *State v. Foster*, 87 Ohio App.3d 32, 621 N.E.2d 843 (2d Dist.1993).

*Mathis*, 8th Dist. Cuyahoga No. 107986, 2019-Ohio-4887, at ¶ 36-40.

{¶ 12} When the officers arrived at Dudas's hotel room, they knocked for about two minutes and identified themselves before Dudas opened the door.

> "The Fourth Amendment generally prohibits police from making a warrantless, nonconsensual entry into a suspect's home to make a felony arrest." *State v. Cooks*, 2d Dist. Clark No. 2016-CA-40, 2017-Ohio-218, ¶10, citing *Payton v. New York*, 445 U.S. 573, 588-589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). These protections also apply to hotel and motel rooms. *Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), citing *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

*State v. Hughes*, 11th Dist. Ashtabula No. 2018-A-0035, 2018-Ohio-5069, ¶ 12.

{¶ 13} According to the officers, when they knocked on the door, they identified themselves and stated that they believed there was an intoxicated juvenile in the room and needed to check on her welfare. Although Dudas did not explicitly ask the officers to enter, she opened the door and moved away from the door, implying that the officers had consent to enter. *See, e.g.*, *State v. Bowling*, 8th Dist. Cuyahoga No. 93052, 2010-Ohio-3595, ¶ 8.

{¶ 14} Dudas argues the fact that she moved away from the door and went to the bed, does not imply that she consented to the officers entering the hotel room. However,

Courts have held that "a person can demonstrate consent to enter either expressly or impliedly, in ways such as *opening* a door and stepping back, or leading an officer through an open door and not expressing that he should not follow." (Emphasis sic.) *Bainbridge v. Kaseda*, 11th Dist. No. 2007-G-2797, 2008-Ohio-2136, ¶ 35; *State v. Cooper*, 9th Dist. Summit No. 21494, 2003-Ohio-5161, ¶ 9, citing *State v. Schroeder*, 6th Dist. Wood No. WD-00-076, 2001 Ohio App. LEXIS 4786 (Oct. 26, 2001); *State v. Asworth*, 10th Dist. Franklin No. 90AP-916, 1991 Ohio App. LEXIS 1623 (Apr. 11, 1991).

*State v. Booker*, 8th Dist. Cuyahoga No. 96935, 2012-Ohio-162, ¶ 22.

{¶ 15} Additionally, the officers did not search Dudas's room without her consent. Once the officers were inside of the hotel room, one officer went to the bathroom because the door was in motion as if someone just walked through it. The officers testified that once in the room, they conducted a protective sweep of the room to ensure their safety and to locate the juvenile they believed to be in the room.

A protective sweep is a reasonable exception to the Fourth Amendment's warrant requirement as a corollary of the exigent or emergency circumstances exception. *State v. McLemore*, 197 Ohio App.3d 726, 2012-Ohio-521, 968 N.E.2d 612, ¶ 9 (2d Dist.); *State v. Mathews*, 2d Dist. Montgomery No. 26326, 2015-Ohio-1047, ¶ 10, citing *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie* at 327.

*State v. Byrd*, 2d Dist. Montgomery No. 27340, 2017-Ohio-6903, ¶ 14-15.

{¶ 16} While conducting a protective sweep, the officers located L.P., who came out of the bathroom. The officers observed wine bottles sticking out of Dudas's purse and a bottle of vodka in the bath tub in plain view. "It has long been settled

that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *State v. McGill*, 8th Dist. Cuyahoga No. 33489, 1975 Ohio App. LEXIS 6091 (May 1, 1975). After Dudas was arrested and mirandized, she consented to the search of her purse, which revealed the drugs and drug paraphernalia. We conclude that the officers did not unlawfully enter Dudas's hotel room, because she gave implied consent. Additionally, the trial court did not err in adopting the magistrate's decision to deny Dudas's motion to suppress.

### III.   Nunc Pro Tunc Entry

{¶ 17} Although Dudas did not assign another error for our review, our review of the record has demonstrated an error in the Rocky River Municipal Court journal entry. First, the journal entry incorrectly reflects that Dudas withdrew her motion to suppress. Dudas filed a motion to suppress on August 20, 2018. The motion was heard during a hearing on November 15, 2018, and the magistrate issued a decision on January 14, 2019. Second, the journal entry states, "the court on February 13, 2015 having undertaken an independent review * * *." Journal entry No. 18 CRB 1264 (Feb. 13, 2019). The journal entry should state that the date is February 13, 2019. Therefore, we remand this matter to the trial court to issue a nunc pro tunc entry to correct the journal entries to reflect that Dudas did not withdraw her motion to suppress and to reflect the correct date of review. *See, e.g., State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 30 ("a

clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court").

**{¶ 18}** Dudas's sole assignment of error is overruled.

**{¶ 19}** Judgment is affirmed and remanded.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

PATRICIA ANN BLACKMON, P.J., and
LARRY A. JONES, SR., J., CONCUR