[Cite as *State v. Stewart*, 2025-Ohio-1189.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                         :

    Plaintiff-Appellee,                        :

                              Nos. 114361 and 114362

    v.                                                      :

PLEAS STEWART,                                        :

    Defendant-Appellant.                       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 3, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-22-676263-A and CR-22-666683-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney and Carley Berman, Assistant Prosecuting
Attorney, *for appellee.*

P. Andrew Baker, *for appellant.*

---

MARY J. BOYLE, J.:

{¶ 1} Although this is a consolidated appeal, defendant-appellant, Pleas Stewart ("Stewart"), only appeals the decision of the trial court denying his motion to suppress in one case, arguing that the search warrant was tainted by an illegal

entry into his home and all evidence obtained after executing the search warrant should be suppressed. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} Stewart was indicted in two separate cases. In January 2022, Stewart was charged in a four-count indictment alleging two counts of failure to comply; one count of receiving stolen property; and one count of obstructing official business ("first case").[1] In September 2022, Stewart pled guilty to one count of failure to comply and one count of attempted receiving stolen property in exchange for the State dismissing the remaining counts. Prior to sentencing, Stewart was arrested and charged in a three-count indictment alleging one count of aggravated robbery with one- and three-year firearm specifications; one count of robbery with one- and three-year firearm specifications; and one count of theft ("second case").[2] In August 2023, Stewart pled guilty in his second case to one count of robbery with the one-year firearm specification in exchange for the State dismissing the remaining counts and specifications.

{¶ 3} In October 2023, Stewart moved to withdraw his pleas in both cases prior to sentencing. The trial court granted Stewart's motion. Then in April 2024, Stewart again pled guilty in his first case to a different plea agreement. This time he pled guilty to one count of failure to comply, one count of attempted receiving stolen

---

[1] *State v. Stewart*, Cuyahoga C.P. No. CR-22-666683-A (Jan. 18, 2022).

[2] *State v. Stewart*, Cuyahoga C.P. No. CR-22-676263-A (Dec. 13, 2022).

property, and one count of obstructing official business in exchange for the State dismissing one count of failure to comply.

{¶ 4} Stewart also filed a motion to suppress in his second case, which was set for hearing. In his motion, Stewart alleged that the police entered his apartment without a warrant and without consent. He argued that the subsequent search warrant was based on evidence observed during an illegal entry and all evidence obtained should be suppressed.

{¶ 5} At the suppression hearing, Detective William Robinson of the Cleveland Heights Police Department ("Det. Robinson") testified on behalf of the State. He gave a brief summary of the incident leading to Stewart's identification and arrest. Det. Robinson testified that on November 16, 2022, he was called to assist patrol officers regarding a robbery complaint that occurred outside a Walgreens on the corner of Mayfield and Superior Roads, in Cleveland Heights, Ohio. Det. Robinson interviewed the victim and learned that the victim used an app called OfferUp to sell items to interested individuals. According to Det. Robinson, the suspect, later identified as Stewart, contacted the victim through the app, wanting to purchase a pair of shoes and a hooded sweatshirt. The victim and the suspect agreed to meet at the Walgreens parking lot to make the sale. Det. Robinson summarized that the suspect arrived in a vehicle, requesting to try on the sweatshirt, and when the victim refused, the suspect brandished a firearm and threatened to kill the victim. The suspect then fled the scene with the sweatshirt and shoes. According to Det. Robinson, the victim provided screenshots of the text exchange between him

and the suspect, as well as the victim and "suspect's OfferUp name or ID." (Tr. 65.) Through OfferUp, Det. Robinson was able to obtain information about the suspect's account. He then obtained a search warrant for the OfferUp account. OfferUp provided the name and driver's license associated with the account, which led to the identification of Stewart. Det. Robinson created a photo-lineup for the victim to view. Through a blind administrator, the victim identified Stewart as the person who robbed him. An arrest warrant was obtained and executed on November 18, 2022.

{¶ 6} Det. Robinson testified that they "had different addresses" for Stewart and proceeded to the first location. (Tr. 66.) When no one responded, he left his business card. This led to a call from Stewart's mother who provided Det. Robinson with Stewart's address and phone number. Det. Robinson testified that the phone number provided matched the phone number the victim had for the suspect. Thereafter, officers responded to Stewart's apartment in Cleveland and arrested Stewart. Because Stewart answered the door shirtless, and it was cold outside, officers asked Stewart if he wanted a jacket. Det. Robinson testified that Stewart responded in the affirmative and led officers inside the apartment and walked them back to his bedroom to obtain a shirt and jacket.

{¶ 7} Det. Robinson's bodycam video was played in its entirety, which depicts Stewart walking in his bedroom and heading to a laundry basket full of clothing. (State's exhibit No. 400.) Stewart then requests the white T-shirt. Det. Robinson can be seen on video grabbing the T-shirt. Det. Robinson testified

that while he was in the bedroom, he noticed a sweatshirt matching the description the victim gave regarding the suspect's clothing lying at his feet near the laundry basket. Det. Robinson testified that he did not retrieve the sweatshirt until he obtained a warrant. Next, the bodycam video depicts Det. Robinson grabbing Stewart's winter jacket that was also lying on the floor. Stewart was led from the room, uncuffed, and allowed to put on his shirt and jacket. Det. Robinson testified that Stewart told officers not to search the apartment. He advised Stewart that they would get a search warrant and come back. Stewart was recuffed and brought to the station. Det. Robinson typed up a search warrant, which was signed by a judge and executed that same day.

{¶ 8} Det. Robinson testified that when they returned to search Stewart's apartment, officers located and seized the tan sweatshirt worn during the commission of the robbery, as well as the "BAPE sweatshirt" and "Yeezy shoes" that were stolen from the victim. (Tr. 78.) In addition, officers recovered two firearms, a black ski mask, a wallet with Stewart's ID, and mail addressed to Stewart.

{¶ 9} Following the conclusion of the hearing, the trial court denied Stewart's motion to suppress. A second plea offer was placed on the record, which Stewart declined. Stewart waived a jury, and a bench trial ensued. The victim's testimony described the robbery and identified Stewart as the person who robbed him at gunpoint. Det. Robinson testified to his investigation and the evidence recovered by officers. The trial court found Stewart guilty of all charges, including aggravated robbery with the accompanying firearm specifications; robbery with the

accompanying firearm specifications; and the theft offense.  The trial court sentenced Stewart to 36 months in prison on his first case and 12 to 15 years in prison on his second case, which was ordered to be served consecutive with his first case.[3]

{¶ 10} Stewart timely appeals and raises one assignment of error for review:

**Assignment of Error:**  The trial court erred when it overruled [Stewart's] motion to suppress.

## II.  Law and Analysis

### Standard of Review

{¶ 11}  Appellate review of a motion to suppress presents mixed questions of law and fact.  *State v. Burnside*, 2003-Ohio-5372, ¶ 8; *State v. Thomas*, 2024-Ohio-1361, ¶ 11 (8th Dist.).  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).  Accepting these facts as true, we must then "independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard."  *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).  "However, we review de novo

---

[3] The court advised Stewart of postrelease control, suspended his driver's license, and ordered Stewart pay court costs.

the application of the law to these facts." *State v. Belton*, 2016-Ohio-1581, ¶ 100, citing *Burnside* at ¶ 8.

{¶ 12} In his sole assignment of error, Stewart argues that the police unlawfully entered his apartment without a warrant, violating his Fourth Amendment rights. Stewart maintains that any evidence observed by officers during the unconstitutional entry cannot be used as a basis for the search warrant. Therefore, he contends that any evidence recovered based on the search warrant is subject to the exclusionary rule because it is "fruit of the poisonous tree." The State maintains that Stewart consented to the officer's entry to obtain his shirt and jacket and observed the evidence in plain view while legally in Stewart's bedroom. We find the State's argument more persuasive.

{¶ 13} We note that the Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that this right is applicable to the States through the Fourteenth Amendment, as well as codified in Section 14, Article I of Ohio Constitution. *State v. Kinney*, 83 Ohio St.3d 85, 87 (1998). Generally, for a search to be considered reasonable, it must be based upon probable cause and executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 350 (1967). "[E]vidence obtained in a warrantless search is generally inadmissible, and under the 'fruit of the poisonous tree' doctrine, such evidence cannot serve as probable cause to support a subsequent warrant." *State v. Posey*,

40 Ohio St.3d 420, 427 (1988), citing *Segura v. United States*, 468 U.S. 796, 804, (1984), citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

{¶ 14} Although warrantless searches and seizures are considered per se unreasonable, there are exceptions to the warrant requirement. *Katz* at 357. One such exception is voluntary consent. *State v. Riedel*, 2017-Ohio-8865, ¶ 32 (8th Dist.), citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *Westlake v. Dudas*, 2020-Ohio-31, ¶ 11 (8th Dist.). The State, however, bears the burden of proving voluntary consent, and it must prove by "'clear and positive' evidence that the consent was 'freely and voluntarily' given" and was not contaminated by any duress or coercion. *Id.*, quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *Posey* at 427.

{¶ 15} Stewart claims that the officer's entry into his residence was unlawful because he was arrested in the apartment hallway and "[i]f [Stewart] had declined the officer's offer to go back into the apartment to put on a shirt, it would have only drawn suspicion." (Appellant's brief, p. 7-8.) He cites *State v. Cooper*, 2005-Ohio-5781 (2d Dist.), in support of his position.

{¶ 16} In *Cooper*, officers went to Cooper's residence to arrest him on an outstanding warrant and to question him about a robbery. *Id.* at ¶ 4. Cooper, who was shirtless, was arrested outside on his porch. Officers then stepped inside the house and sat Cooper on the couch. While inside, an officer observed a blue jacket that matched the description of the robbery suspect on a chair across from the couch. *Id.* Cooper was advised that he was a suspect in a robbery. Cooper

responded that it was a theft, not a robbery, because he used a BB gun. While Cooper was handcuffed and seated on the couch, he consented to a search of his home. The Second District Court of Appeals held that the initial entry into Cooper's home was unlawful. The court reasoned that

> the arrest was "effected" when detective Miller handcuffed Cooper while standing on the front porch. Cooper was in custody at that time. Nothing in the record indicates that [Cooper] subsequently invited the officers into the home *or that he asked to retrieve a shirt* prior to being taken to the Dayton Safety Building. Instead, Miller and the other officers simply "stepped into" the residence, uninvited, to talk to Cooper about the Elder-Beerman robbery. Given the absence of a search warrant or any persuasive argument by the State regarding an exception to the warrant requirement, we therefore conclude that the officers' entry into Cooper's home violated the Fourth Amendment.

(Emphasis added.) *Id.* at ¶ 17.

{¶ 17} Unlike *Cooper*, in the instant case, the State offered evidence of Stewart's consent by presenting testimony from Det. Robinson, as well as his bodycam video. (State's exhibit No. 400.) A review of the bodycam video demonstrates that officers knocked on Stewart's door twice, waiting a full 30 seconds before Stewart asked who was at the door. Officers identified themselves as police. Thereafter, it took Stewart nearly a full minute to come to the door, shirtless. When Stewart opened the door, he was commanded to put his hands up and to step outside into the hallway where he was placed in handcuffs. Due to the cold weather, officers asked him if there was a coat or jacket he wanted to grab, Stewart responds with "a coat or a? Uh, yeah."[4] (State's exhibit No. 400.) Stewart then stepped

---

[4] We note for the record that the bodycam video depicts the officers in jackets and winter hats, as is typical in late November in Cleveland, Ohio.

towards the door to go inside, but an officer stepped in front of Stewart. That officer walked inside first and can be viewed observing the empty apartment. He asked, "where's the jacket at? Is this it?" pointing at something on the floor. (State's exhibit No. 400.) Stewart responded "No, my jacket in my room. Can I put a shirt on?" and then Stewart walked officers towards his bedroom. When in his bedroom, Stewart asked for the white T-shirt in a laundry basket on the floor; Det. Robinson grabbed it, putting it over Stewart's head. Det. Robinson then grabbed Stewart's winter jacket off the floor and draped it over Stewart's shoulders. Officers walked Stewart out of his bedroom, uncuffed him, let him put his shirt and jacket on, and then re-cuffed him and transported him back to the station.

{¶ 18} "The United States Supreme Court has held that 'whether a consent to search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances.'" *Riedel*, 2017-Ohio-8865, at ¶ 32 (8th Dist.), quoting *Schneckloth*, 412 U.S. at 227. Furthermore, "[k]nowledge of the right to refuse is not a prerequisite to voluntary consent, but consent must not have been coerced by threats or force or by a claim of lawful authority." *State v. Moncrease*, 2000 Ohio App. LEXIS 1650, *9 (8th Dist. Apr. 13, 2000), citing *Schneckloth* at 233. As this court has previously stated, "Courts have held that 'a person can demonstrate consent to enter either expressly or impliedly, in ways such as opening a door and stepping back or leading an officer through an open door and not expressing that he should not follow.'" *State v. Booker*, 2012-Ohio-162, ¶ 22 (8th Dist.), quoting

*Bainbridge v. Kaseda*, 2008-Ohio-2136, ¶ 35 (11th Dist.); citing *State v. Schroeder*, 2001 Ohio App. LEXIS 4786 (6th Dist. Oct. 26, 2001); *State v. Asworth*, 1991 Ohio App. LEXIS 1623 (10th Dist. Apr. 11, 1991); *State v. Cooper*, 2003-Ohio-5161, ¶ 9 (9th Dist.); *Dudas*, 2020-Ohio-31, at ¶ 11 (8th Dist.).

{¶ 19} Here, the evidence clearly demonstrates that Stewart consented by his words and actions when he confirmed that he wanted a jacket and he headed back inside his apartment, leading officers to his bedroom to retrieve his jacket. In addition, Stewart walked over to the laundry basket and specifically asked for the white T-shirt; unfortunately for Stewart, the sweatshirt he wore during the commission of the robbery, as described by the victim, was in plain view for Det. Robinson to observe.

{¶ 20} Under the plain view exception to the search warrant requirement, police may seize items in plain view without a warrant if the initial intrusion leading to the item's discovery was lawful and the criminal nature of the item was "immediately apparent" to the officer. *State v. Waddy*, 63 Ohio St.3d 424, 442 (1992). The "immediately apparent" requirement of the plain view doctrine is met when police have probable cause to associate an object with criminal activity. *Id.*, citing *State v. Halczyszak*, 25 Ohio St.3d 301 (1986); *State v. Hakim*, 2018-Ohio-969, ¶ 24 (8th Dist.).

{¶ 21} As we previously stated, Det. Robinson was lawfully in Stewart's bedroom to retrieve his jacket. While in the bedroom, Det. Robinson observed the sweatshirt in plain view and he immediately recognized it as matching the

description the victim gave regarding the offender's clothing. Consequently, we find that Det. Robinson's observation was not "fruit of the poisonous tree."

**{¶ 22}** Det. Robinson testified that he "left [the sweatshirt] there," went back to the police station, and typed up a search warrant for Stewart's apartment. (Tr. 70.) Because we find that Det. Robinson's entry into Stewart's bedroom was lawful and his observation of the incriminating sweatshirt was in plain view, the subsequent search warrant was constitutional. As a result, the evidence obtained during the execution of the search warrant was admissible.

**{¶ 23}** Accordingly, Stewart's sole assignment of error is overruled.

**{¶ 24}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

LISA B. FORBES, P.J., and
DEENA R. CALABRESE, J., CONCUR