[Cite as *State v. Woods*, 2026-Ohio-1204.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | No. 114861 |
| v. | : | |
| TERENCE WOODS, | : | |
| Defendant-Appellee. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 2, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-696480-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assistant Prosecuting Attorney, *for appellant.*

James J. Hofelich, *for appellee.*

ON RECONSIDERATION:[1]

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Plaintiff-appellant State of Ohio ("State") appeals the trial court's decision granting defendant-appellee Terence Woods's ("Woods") motion to suppress evidence obtained in a warrantless search of his apartment finding that the search and seizure violated his Fourth Amendment rights. Specifically, the issues before us are (1) whether Woods consented to police officers entering his apartment; and (2) whether the officers' subsequent protective sweep of the apartment including Woods's bedroom was justified. Following a thorough review of the record and applicable legal authority, we affirm the trial court's decision.

## I. Procedural History

{¶ 2} Following a warrantless search of his apartment where a weapon was found, Woods was charged with having weapons while under disability, a third-degree felony with a furthermore specification that Woods owned and or possessed the weapon "which was contraband and/or property derived from or through the commission or facilitation of the offense, and/or was an instrumentality the offender used or intended to use in the commission or facilitation of the offense." Woods entered a not guilty plea and shortly thereafter

---

[1] The original decision in this appeal, *State v. Woods*, 2025-Ohio-5344 (8th Dist.), released on November 26, 2025, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

filed a motion to suppress, alleging that the search violated his Fourth Amendment protections. The court held a suppression hearing after which the trial court granted Woods's motion to suppress. The State appeals, proffering one assignment of error for our consideration:

> The trial court erred in granting the motion to suppress where the entry was supported by implied consent and the firearm was recovered in plain view during a lawful protective sweep.

## II. Factual History

{¶ 3} The sole witness at the hearing, Lieutenant Gregory Drew ("Lt. Drew") of the Cuyahoga Metropolitan Housing Authority police ("CMHA") testified that he, along with two other officers, were investigating a burglary on October 22, 2024. They were looking to speak to an individual named Alexis, the owner of a Range Rover that the burglary suspect had already been arrested in, and "that pointed to additional breaking and enterings and burglaries that happened in various jurisdictions[.]" (Tr. 11.) The vehicle was parked at a CMHA apartment complex. The officers spoke to the property manager, who indicated that Alexis would likely be in apartment 209, which was leased by Woods, or apartment 210.

{¶ 4} The officers contacted dispatch with Woods's name and were informed that Woods had an active misdemeanor warrant relating to unpaid traffic fines with the Bratenahl Police Department. None of the officers verified the warrant or inquired as to whether Bratenahl wanted Woods arrested. Nonetheless, the officers knocked at apartment 209 and, after some time, Woods, who is hearing

impaired, came out into the hallway, shutting the door behind him while speaking to the officers. Lt. Drew testified that

> [Woods] came to the door, and I told him we had a warrant for his arrest with Bratenahl. I asked him about Alexis. I think I asked if she was in the apartment. He indicated that he was home alone. And I motion, "Let's go inside and talk," he turned around and walked into his apartment, and we followed behind. We had a conversation inside.

(Tr. 13.)

{¶ 5} Lt. Drew elaborated that Woods "even sort of held the door open a little bit as I went through the threshold so the door wouldn't close on me." (Tr. 14.) Following this testimony, the body-camera footage of the interaction was played for the court. It is undisputed that Woods never verbally consented to the officers' entry into the apartment, nor did the officers ever verbally ask for permission to enter the apartment. Upon entry, Lt. Drew spoke with Woods in the living room area while the other officers, without permission, immediately proceeded to the bedroom and conducted a protective sweep.

{¶ 6} Lt. Drew testified that during the protective sweep, officers located a firearm in a bedroom that was in plain view. A criminal history check indicated that Woods was under disability and prohibited from possessing a firearm. Subsequently, Woods was arrested, resulting in the charges that form the basis of the indictment.

{¶ 7} At the close of the suppression hearing, the trial court withheld its decision but made the following relevant statements on the record:

So the court's concern is the elephant that is not inside the room. If this was an issue where you have something that is seen apparently right there in plain view, or search incident to arrest, which means the l[o]unge area, that would be a very different thing. In other words, had the gun, or the elephant, been in the room where the defendant was.

So before the court is whether or not the police can actually go into other rooms. And the exception that you are asking the court to follow swallows up the general rule here that warrantless searches are per se unreasonable.
. . .

There was no search incident to his arrest. That is the immediate area. Can an exigency be boot[-]strapped into a consensual entry into the home anyways?

(Tr. 47-49.)

### III. Law and Analysis

**{¶ 8}** The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" Ohio Const., amend. IV; U.S. Const., amend. IV. A search violates the Fourth Amendment "'when the government gains evidence by physically intruding on [a] constitutionally protected area[]'" or when the intrusion violates an individual's reasonable expectation of privacy. *State v. Diaw*, 2025-Ohio-2323, ¶ 10, quoting *Florida v. Jardines*, 569 U.S. 1, 11 (2013). Warrantless searches are per se unreasonable under the Fourth Amendment, and the State bears the burden of establishing that the search falls into an exception to the warrant requirement. *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 18, citing *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978).

{¶ 9} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308, 314 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, we must defer to the trial court's factual findings if competent, credible evidence exists to support such findings. *Burnside* at ¶ 8; *Dunlap* at *id*. However, the appellate court must still independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Burnside* at *id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist. 1997).

{¶ 10} Our judicial district reviews appeals from lower court decisions granting or denying motions to suppress without factual findings when the parties did not specifically request factual findings and where the record provides a sufficient basis to review the assigned errors. *See, e.g., State v. Parrish*, 2023-Ohio-3356, ¶ 9 (8th Dist.). Here, the State concedes in its brief that the relevant factual findings are not in dispute because of the available body-camera footage and asks us to review whether those facts support the court's decision to suppress the firearm. Accordingly, a review of whether the undisputed facts herein satisfy a recognized exception to the presumption that warrantless searches are per se unconstitutional is warranted.

### A. Consent

{¶ 11} Here, the State first argues that the search was consensual, referencing voluntary consent, an exception to the per se unreasonableness of warrantless searches. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). When the State invokes the consent exception, the State must prove that consent was given freely, voluntarily, and without coercion or duress, which is determined by examining the totality of the circumstances. *Westlake v. Dudas*, 2020-Ohio-31, ¶ 11 (8th Dist.); *Schneckloth* at 227. The totality of the circumstances is viewed objectively, i.e., whether a reasonable person would determine that entry was authorized. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). The consent need not be expressly given; it may be implied through words, gestures, or conduct that would convey to a reasonable officer that entry is permitted. *Dudas* at ¶ 14. However, "[k]nowledge of the right to refuse is not a prerequisite to voluntary consent, but consent must not have been coerced by threats or force or by claim of lawful authority." *State v. Moncrease*, 2000 Ohio App. LEXIS 1650, *9 (8th Dist. Apr. 13, 2000), citing *Schneckloth* at 233. "The voluntariness of consent is vitiated by police statements that lead the person to believe that refusing consent will be fruitless." *Id.* at *9-10, citing *State v. Foster*, 87 Ohio App.3d 32, 41 (2d Dist. 1993).

{¶ 12} The State asserts that the totality of the circumstances would lead a reasonable officer to believe that Woods gave implied consent to the officers to enter his apartment. The State specifically points to (1) Woods's response that "there's no one here but me," followed by Woods placing his hand on the doorknob

as if inviting the officers in to verify his statement, and opening the door; (2) Lt. Drew stating, "[C]ome on, let's talk"; and (3) Woods holding the door as he went into his apartment. In contrast, Woods argues that his lack of consent is demonstrated by (1) the lack of verbal consent; (2) the lack of a gesture inviting the officers inside; (3) Woods holding the door open only after Lt. Drew crossed the threshold; (4) Woods completely closing the door behind him when initially answering the door; and (5) the fact that officers confronted Woods about his misdemeanor warrant before entering the apartment despite going to the apartment for the purpose of locating Alexis.

{¶ 13} The State contends that this case is identical to *Dudas*. In *Dudas*, the officers conducted a traffic stop and discovered that the driver took Dudas and a minor to a hotel known for prostitution, drug trafficking, and human trafficking. *Id.* at ¶ 3. The driver informed the police that alcohol left behind in the vehicle belonged to either Dudas or the minor child. *Id.* The officers proceeded to the hotel to conduct a juvenile welfare check and announced the same when knocking at the hotel room door that Dudas had rented. *Id.* at ¶ 5. Dudas opened the door, said nothing, and retreated to lay on the hotel bed. *Id.* The officers entered and searched the hotel room and found the intoxicated minor in the bathroom. *Id.* This court held that Dudas had given officers implied consent to enter by opening the door and walking away from it. *Id.* at ¶ 16.

{¶ 14} The State also asks us to consider *State v. Stewart*, 2025-Ohio-1189 (8th Dist.). In *Stewart*, officers went to Stewart's apartment to arrest him in

connection with an armed robbery. *Id.* At the time of arrest, Stewart was shirtless. *Id.* at ¶ 6. Because it was cold, officers asked Stewart if he wanted to retrieve a jacket. *Id.* Stewart responded in the affirmative and "led officers inside the apartment and walked them back to his bedroom to obtain a shirt and jacket." *Id.* Because Stewart was handcuffed, he directed the officers to a laundry basket in his bedroom where officers saw, in plain view, a sweatshirt that Stewart had been accused of stealing. *Id.* at ¶ 7. Stewart explicitly told officers that they could not search the apartment, so the officers obtained a valid search warrant and took possession of the stolen objects, including the sweatshirt that had been seen by the officer while retrieving a jacket. *Id.* In his motion to suppress, Stewart argued that because the basis for the search warrant was obtained by unlawful entry into his apartment, the stolen items located as a result of the search warrant should be suppressed. This court disagreed, holding that Stewart's directing the officers into his bedroom for the purpose of retrieving his jacket constituted voluntary consent. *Id.* at ¶ 19.

{¶ 15} Moreover, a myriad of cases confirm that "[c]ourts have held that 'a person can demonstrate consent to enter either expressly or impliedly, in ways such as opening a door and stepping back or leading an officer through an open door and not expressing that he should not follow.'" *State v. Booker*, 2012-Ohio-162, ¶ 22 (8th Dist.), quoting *Bainbridge v. Kaseda*, 2008-Ohio-2136, ¶ 35 (11th Dist.) (collecting cases). However, it must be emphasized that these cases provide that courts *may* find that a person consented to the search; it is not compulsory. A

reviewing court must still examine the totality of the circumstances leading to the warrantless intrusion to determine, based on the particular facts of each case, whether consent was given by the defendant.

{¶ 16} We have independently reviewed the body-camera footage of the incident at issue and conclude that this footage demonstrates that Woods gave implied consent to the officers to enter his apartment. Specifically, the body-camera footage shows Woods exit the apartment and close the door behind him. When the officer asks him if Alexis is inside, Woods opens the door partway. When the officer says to Woods "let's talk," Woods opens the door and leads him into his apartment. At no point does Woods indicate that the officers should not follow. As recognized by the above legal authority, these facts are sufficient to support a finding of implied consent by a defendant. Therefore, upon viewing this interaction in its totality, a reasonable officer would have viewed these circumstances as Woods providing them with implied consent to enter his apartment.

## B. Protective Sweep

{¶ 17} Even though we have determined that Woods gave implied consent to the officers to enter his apartment, we must next consider whether the subsequent search or protective sweep by the officers of his bedroom was lawful. The State argues that the trial court's ruling was erroneous because "it treated the officers' limited protective sweep as a consent-based evidentiary search, and thus incorrectly concluded that the officers were required to obtain a second, explicit

consent to search the apartment after entering."  The State relies on *Maryland v. Buie*, 494 U.S. 325 (1990) for support.

{¶ 18} *Buie* also carves out an exception to the general rule that warrantless searches are per se unreasonable.  "A 'protective sweep' is a quick and limited search of a premises, incident to an arrest and conducted to protect the safety of police officers or others." *Id*. at 327.  The *Buie* Court, however, limited its ruling to "what level of justification is required . . . before police officers, while effecting the arrest of a suspect in [their] home pursuant to an arrest warrant, may conduct a warrantless protective sweep of all or part of the premises." *Id*.  The specific facts of *Buie* led the Court to conclude that "[p]ossessing an arrest warrant and probable cause to believe Buie was in his home, the officers were entitled to enter and to search anywhere in the house in which Buie might be found." *Id*. at 332-333.  However, "[o]nce he was found . . . the search for him was over, and there was no longer that particular justification for entering any rooms that had not yet been searched." *Id*. at 334.

{¶ 19} *Buie* specifically limited its holding to situations "incident to an arrest."  Nevertheless, the Ohio Supreme Court has held that "[p]olice officers can conduct a protective sweep without making an arrest if circumstances warrant." *State v. Adams*, 2015-Ohio-3954, ¶ 188.  "In order for officers to undertake a protective sweep of an area 'they must articulate facts that would warrant a reasonably prudent officer to believe that the area to be swept harbored an

individual posing a danger to those on the scene.'" *Id.* at ¶ 189, quoting *United States v. Biggs*, 70 F.3d 913, 915 (6th Cir. 1995).

{¶ 20}The circumstances of the instant matter, however, did not warrant the extended nature of the protective sweep.  The police were not at Woods's apartment to arrest Woods, and Alexis was not under arrest. Woods came to the door voluntarily and did not show any sort of resistance to the officers.  If the officers intended to act on his misdemeanor arrest warrant, they could have done so when Woods exited the apartment without incident and without the need to search the apartment any further.  Woods did not resist or protest when he was informed of the warrant and appeared calm and cooperative.  Without consent to enter other areas of the apartment, and without a reason to believe that their safety was at risk, the officers could not and did not need to conduct a protective sweep of the bedroom where they discovered the firearm

{¶ 21} Further, assuming arguendo that *Buie*, 494 U.S. 325, is applicable to the facts herein, the protective sweep of the bedroom exceeded the boundaries of reasonableness pursuant to *Buie*.  Woods was in the other room cooperating with Lt. Drew and was nowhere within reach of the firearm.  And Woods's demeanor and assertion that "there's no one here but me" did not reasonably indicate to the officers that another individual was in the apartment that could threaten their safety.  The fact that Alexis *may* have been in Woods's apartment is insufficient to justify entrance into the bedroom given the circumstances, especially because it was

not known whether Alexis knew that her vehicle had been used in a burglary at that time.

{¶ 22} Finally, the State argues that the firearm was in plain view and therefore could be lawfully seized without a warrant. This concept, however, is predicated on officers not violating Fourth Amendment protections during the search where the evidence was found. *Horton v. California*, 496 U.S. 128, 136-137 (1990). Indeed, based on the totality of the circumstances discussed herein, the State did not meet its burden of demonstrating that the protective sweep of Woods's bedroom fell within a recognized exception to the warrant requirement. Therefore, this search was violative of Woods's Fourth Amendment protections and, thus, the trial court properly granted the motion to suppress. The State's sole assignment of error is overruled.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

DEENA R. CALABRESE, J., CONCURS;
KATHLEEN ANN KEOUGH, P.J., CONCURS (WITH SEPARATE OPINION)

KATHLEEN ANN KEOUGH, P.J., CONCURRING:

{¶ 24} I concur fully with the majority's judgment affirming the trial court's suppression decision because, for the reasons stated by the majority, it is clear that the search exceeded the boundaries reasonableness and necessity based on the totality of the circumstances

{¶ 25} I write separately because I disagree with the majority's conclusion that Woods voluntarily consented to the search and would have found that Woods did not consent to the search.

{¶ 26} In *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), the United States Supreme Court held that voluntary consent is an exception to per se unreasonable warrantless searches.

{¶ 27} I emphasize, as the majority does, that *Booker*, 2012-Ohio-162 (8th Dist.), and the cases cited in *Bainbridge*, 2008-Ohio-2136 (11th Dist.), provide that a court may find that a person consented to the search; it is not compulsory. A reviewing court must still examine the totality of the circumstances leading to the warrantless intrusion.

{¶ 28} The case herein presents one such occasion where in the context of all the established facts, I would find that Woods did not grant voluntary consent to the officers. The totality of the circumstances herein are unique and distinguishable from the case law that the State cites, including *Dudas* and *Stewart*. Woods was not a suspect in the burglaries — nor was Alexis. The officers were not knocking on Woods's door to arrest him on his unverified misdemeanor warrant. When Woods answered the door, he closed the door behind him and only opened it after the police had confronted him about an active warrant and bombarded him with questions. In addition to the confrontational statements, the view shows that Lt. Drew moved forward and crossed the threshold before Woods "held" the door open, telling Woods "come on, let's talk." Moreover, officers were given two potential apartments that the property manager assumed were where Alexis could have been located, and it is undisputed that the officers did not possess a search warrant for either apartment and that they were only going to the apartments in furtherance of a non-exigent investigation.

{¶ 29} The video demonstrates that as soon as Woods opened the door, Lt. Drew informed Woods that he had a misdemeanor warrant out of Bratenahl, then stated that they had received complaints about the apartment, asked, "What's going on," and asked whether Alexis was in the apartment. Woods only said, "There's no one here but me" before Lt. Drew stepped over the threshold and stated, "Come on, let's talk." In *Dudas*, 2020-Ohio-31, ¶ 11 (8th Dist.), unlike in this case, the police made the nature of their visit and presence clear — they were conducting a welfare

check on a juvenile. Here, Woods's warrant was not further discussed nor did officers effectuate an arrest while Woods was outside of his apartment. Instead, Woods opened the door in response to an inquiry as to whether Alexis, who was not wanted for an arrest but simply for questioning, was in the apartment. In this context, immediately mentioning Woods's misdemeanor arrest warrant can be construed as an objective claim of lawful authority, especially because it was not the true reason for the officers' visit to Woods's apartment.

{¶ 30} Similarly, I would find *Stewart*, 2025-Ohio-1189 (8th Dist.), distinguishable because in Stewart the officers obtained a search warrant after being led into the room where the stolen items were seen in plain view and after Stewart had been placed under arrest. Here, the police were not at Woods's apartment to effectuate an arrest of Woods or even to arrest Alexis. These facts are undisputed. Moreover, officers could have arrested Woods when he came outside of the door and closed it behind him if it was their intention to act upon the warrant.

{¶ 31} Accordingly, I would find that the totality of the circumstances in this case contains sufficient evidence upon which a reasonable officer could have found that Woods did not consent, expressly or impliedly, to the officers entering his apartment. For these reasons, I join the majority in affirming the trial court's decision and but disagree with its reasoning pertaining to Woods giving voluntary consent; I would have found that Woods did not voluntarily consent to the search.